BECKER *v.* LA CORE.

SAME *v.* JOHNSON.

SAME *v.* MEBERT.

SAME *v.* WILSON.

SAME *v.* WILCOX.

CHATTEL MORTGAGES — CONDITIONAL SALE — MERCHANDISE PUR-
CHASED FOR RESALE—RECORDING WITH REGISTER OF DEEDS—
STATUTES.

Where plaintiff, an automobile distributor, sold on condi-
tional sale contracts to a dealer a number of automobiles
for resale, but neglected to record same in the office of
the register of deeds of the county where said automo-
biles were located, as required by 3 Comp. Laws 1915,
§ 11988, such reservation of title was void as against
good-faith purchasers of said dealer.

Error to Grand Traverse; Mayne (Frederick W.),
J. Submitted April 13, 1920. (Docket Nos. 53-57.)
Decided September 30, 1920.

Separate actions of replevin by Ray E. Becker, do-
ing business as the Becker Auto Company, against
John O. La Core, Guy M. Johnson, A. W. Mebert, Wil-
liam E. Wilson, and Fred Wilcox for the possession of
certain automobiles. The cases were consolidated and
tried before the court without a jury. Judgment for
defendants. Plaintiff brings error. Affirmed.

*Connine & Connine* (*Cornelius Hoffius,* of counsel),
for appellant.

*Patchin & Duncan* and *Clink & Williams,* for ap-
pellees.

These five cases were separately instituted, but in-

asmuch as they involved the same questions, they were tried together in the circuit court before the judge without a jury. In each case the plaintiff had brought replevin to secure possession of an automobile sold by the plaintiff to one Rice, and by said Rice sold to the individual defendant

It appears that on the 6th day of September, 1916, plaintiff (as distributor for the Saxon automobile) entered into what is called a "limited dealer's" agreement with one Fred C. Rice, as dealer. The contract is a very lengthy one. Its first section follows:

"Subject to the conditions hereinafter expressed, Distributor hereby grants to Dealer the right, during the continuance of this agreement, to purchase from Distributor, automobiles supplied by The Saxon Motor Car Corporation, hereinafter referred to as Manufacturer, for re-sale by Dealer within the following described territory, and none other, to-wit: Leelanau, Benzie and Grand Traverse counties, Michigan. Distributor agrees to protect Dealer in the right so granted, to the extent that Distributor will refer to Dealer inquiries for Saxon automobiles received from Dealer's territory, and except as hereinafter provided, will not knowingly sell automobiles to other persons in Dealer's territory during the continuance of this agreement."

It provided for the sale by the distributor and acceptance by the dealer of not less than 25 Saxon automobiles between the date of the contract and July 31, 1917. At the time the contract was entered into, the plaintiff (distributor) was doing business in Grand Rapids and Fred C. Rice (dealer) was the proprietor of an establishment in Traverse City, Mich., where he carried a stock of goods and merchandise, consisting of three or four makes of automobiles, auto tires, greases, oils, auto accessories and parts, auto fixtures and supplies, gasoline and containers, purchased from different manufacturers and dealers and kept by him for re-sale.

On December 8, 1916, plaintiff delivered to said Rice the three automobiles involved in the La Core, Johnson and Wilcox cases, and on January 16, 1917, the two automobiles involved in the Mebert and Wilson cases. Three machines were delivered to Rice under title retaining or conditional sale contracts in the following form:

"Grand Rapids, Mich., Dec. 8th, 1916.

"I hereby acknowledge that I have received of the Becker Auto Company one Saxon automobile, No. 21387-25212, which I agree to purchase from them on the following stipulated terms: I agree to pay the Becker Auto Company, or their order, the sum of seven hundred twenty-one and 57/100 ($721.57) dollars, first initial payment, one hundred sixty-seven and 37/100 ($167.37) dollars, the receipt of which is hereby confessed and acknowledged, balance of five hundred fifty-four and 20/100 ($554.20) dollars, payable as per the following note which is a part of this contract. Should I secure an order for this car, then I agree to remit the proceeds to the Becker Auto Company, and secure bill of sale from them before delivering same.

"In the case of failure to pay said balance as herein specified, or if said automobile is removed, or attempted to be removed, from the city in which I reside, or be otherwise disposed of, or if I shall sell or incumber, or shall attempt to sell or incumber said motor car; or whenever the said Becker Auto Company shall deem the debt insecure, then the full amount unpaid hereunder, including the attached note, shall become due and payable forthwith, and at the option of the said Becker Auto Company, they may, without any previous notice or demand of performance and without being guilty of any trespass or tort and without rendering themselves liable to refund any moneys, enter any premises where said automobile may be and, without process of law, immediately take possession of and to said automobile and remove same from any premises where said automobile may be found.

"In case of failure to pay said balance according to the terms of this contract, I will, on demand, return

said automobile in its original condition, to the garage or place of business of said Becker Auto Company, free from all charges or claims of any nature, or they may at their option, make such disposition of said motor car as they shall deem fit, and all money paid by me shall be retained by them as liquidated damages for non-fulfilment of this contract. Or said motor car may be sold with or without notice, either at public or private sale and the proceeds, less the expense of taking, removing, holding and selling said motor car, shall be credited upon the amount unpaid hereunder; or without such sale there may be credited upon the amount unpaid the fair market value of said motor car at the time of repossessing the same, and in either event, I promise and agree to pay the balance forthwith. I agree to pay promptly when due all taxes, assessments or other public charges which may be levied upon said motor car, as well as all storage and other carrying charges.

"I further agree to save the Becker Auto Company harmless from all liens, attachments, etc., that may be applied against the car, and in case any expense is incurred by them because of such liens, attachments, etc., then such amount shall be added to and become a part of the unpaid balance of my note or it shall, at their option, become a personal debt owing by me to said Becker Auto Company, and I am to be held responsible for same. It is further agreed that the loss, injury, or destruction of said motor car shall not operate in any manner to release me from payment as herein specified, and the giving of notes or renewals or extensions thereof shall not release me from the conditions of this agreement.

"I agree not to use this car in any way whatsoever and will protect and keep it in such condition that the Becker Auto Company, in case they repossess same, may be able to dispose of it as a new car. I further agree to permit any properly designated representative of the Becker Auto Company to inspect this car at any time.

"It is agreed that the title to, ownership in, and right of possession of said motor car are vested in said Becker Auto Company until all indebtedness as specified in this contract, also any judgments which

they, their successors, or assigns may obtain therefor, shall have been fully paid in money at which time ownership shall pass to me.

"I agree not to sell, transfer or assign this contract and lease without the written consent of said Becker Auto Company.

"I acknowledge the receipt of a true copy of this contract."

The 5 machines covered by these 5 contracts were a part of the 25 mentioned in the limited dealer's agreement then subsisting between the plaintiff and said Rice. The said limited dealer's agreement was not revoked by the parties nor modified, except by the execution by plaintiff and Rice of the 5 title retaining contracts. Rice, having secured possession of the 5 machines, covered by the title retaining contracts, later sold them to the 5 individual defendants, each of whom paid him in full for the machine so purchased. Rice did not pay the plaintiff for the machines or secure a bill of sale from plaintiff for each machine as sold, as he had contracted to do in the several conditional sale contracts. Subsequent to said sales, however, he made large payments to plaintiff which were credited by plaintiff on other contracts not involved in these suits, with his (Rice's) consent. Copies of all 5 of the conditional sale contracts, more or less defective as to signatures and as to the character of the affidavit attached thereto, were filed in the office of the city clerk of Traverse City, Michigan. No copy or purported copy or original of any of said 5 conditional sale contracts was at any time filed in the office of the register of deeds for Grand Traverse county.

The learned circuit judge, after an exhaustive hearing, held that the defendants in each of the cases were purchasers in good faith and without notice, either actual or constructive, of the claim of title of the plaintiff and that judgment should be entered in each case

to the effect that said defendants did not unlawfully detain said automobiles, and judgment was so entered, with costs against plaintiff.

BROOKE, J. (*after stating the facts*). Plaintiff presents its case in this court under 47 assignments of error which we will not consider in detail. Determination may, we think, be predicated upon a single undisputed fact which is fatal to plaintiff's contention, and that fact is that the conditional sale contracts were not filed in the office of the register of deeds for Grand Traverse county. The statute (Act No. 64, Pub. Acts 1915, 3 Comp. Laws 1915, § 11912) provides:

"Whenever any personal property is sold and delivered to any person, firm or corporation regularly engaged or about to engage in the business of buying and selling such personal property, with the condition affixed to the sale that the title thereto is to remain in the vendor of such personal property until the purchase price thereof shall have been paid, with the agreement express or implied, that the same may be re-sold, every such conditional sale in order for the reservation of title to be valid, except as between the vendor and vendee shall be evidenced in writing and the written contract of every such conditional sale or a true copy thereof shall be filed and discharged in the same manner as chattel mortgages are required to be filed and discharged."

The law covering the filing of chattel mortgages, as amended by Act No. 163, Pub. Acts 1915 (3 Comp. Laws 1915, § 11988), is as follows:

"SECTION 10. Every mortgage or conveyance intended to operate as a mortgage of goods and chattels which shall hereafter be made which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subse-

211—Mich.—44.

quent purchasers or mortgagees in good faith, unless the mortgage or a true copy thereof shall be filed in the office of the township clerk of the township, or city clerk of the city, or city recorder of cities having no officer known as city clerk, where the goods or chattels are located, and also where the mortgagor resides, except when the mortgagor is a non-resident of the State, when the mortgage or a true copy thereof shall be filed in the office of the township clerk of the township, or city clerk of the city, or city recorder of cities having no officer known as city clerk, where the property is. And unless the mortgagor named in such mortgage or conveyance intended to operate as a mortgage, or some person for him having knowledge of the facts shall, before the filing of the same, make and annex thereto an affidavit setting forth that the consideration of said instrument was actual and adequate, and that the same was given in good faith for the purposes in such instrument set forth. No officer shall receive such instrument or file the same in his office until such affidavit is made and annexed thereto. Every person who shall knowingly make any false statement in any such affidavit, upon conviction thereof shall be deemed guilty of the crime of perjury: *Provided,* That in case of corporations engaged in transporting passengers or freight, or conveying electricity or gas or telephonic or telegraphic communications, all that is or shall be required is the filing of the copy of such mortgage with the register of deeds of each county through which the lines or property thereof passes, and such mortgages shall not require any affidavit of renewal: *Provided further,* That when such mortgage or other conveyance intended to operate as a mortgage is given upon a stock of merchandise or merchandise and fixtures or any part thereof purchased for re-sale at retail then such instrument or a true copy thereof, and of the affidavit thereto attached shall also be filed in the office of the register of deeds of the county where the goods and chattels are located."

The last proviso in the section above quoted provides that whenever the mortgage or other conveyance intended to operate as a mortgage upon any stock of

merchandise *or any part thereof* purchased for re-sale at retail, then such instrument or a true copy thereof shall also be filed in the office of the register. of deeds of the county where the chattels are located.

It is strenuously insisted by plaintiff that the automobiles in question in this case were not purchased for re-sale within the meaning of this section and did not constitute a part of his stock of merchandise within such meaning and therefore that the provisions of the foregoing section do not apply. We are of the opinion that the exact converse is conclusively established by the records in these cases. The limited dealer's contract provides in terms for the re-sale of the 25 automobiles therein ordered. Rice was a dealer in automobiles, maintaining an establishment for the sale of automobiles and the plaintiff dealt with him as such dealer. Moreover, the conditional sale contracts themselves contemplate the re-sale of the several machines by Rice, he agreeing to get orders for them and then secure from the plaintiff a bill of sale before delivery of possession thereof. There is no question that the plaintiff knew they were to be re-sold and that when they were delivered to Rice they became a part of his stock of merchandise held for re-sale (under the provisions of the conditional sale contracts). Under these circumstances, there can be no question but that the provisions of the act last above cited apply.

No question arises as to the good faith of the defendants. They dealt with Rice under the belief that he was the owner of the cars purchased by them, clothed with full authority to convey title as well as possession. They had no actual notice of the plaintiff's lease and may not be charged with constructive notice because of plaintiff's failure to follow the statutory requirements. This determination based upon facts undisputed, disposes of the case.

Many other questions touching the sufficiency of the

copies filed with the city clerk, the agency of Rice, the estoppel of plaintiff by its own acts, etc., are argued at large by counsel. Their consideration is unnecessary.

The judgment is affirmed.

MOORE, C. J., and STEERE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.