### EMPLOYERS' CASUALTY CO. et al. v. HELM et al. (No. 7118.)

Court of Civil Appeals of Texas. Austin. May 18, 1927.

Rehearing Denied June 8, 1927.

1. **Chattel mortgages ⚖39—Instrument securing loan to dealers to take up draft for purchase price of automobiles held "chattel mortgage," not conditional sale (Rev. St. 1925, art. 5489).**

Instrument executed by automobile sales agents to secure loan of money to them to take up drafts for purchase price of automobiles *held*, in view of evidence and Rev. St. 1925, art. 5489, to be a "chattel mortgage," and not a conditional sale.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Chattel Mortgage.]

2. **Chattel mortgages ⚖40—Whether instrument executed to secure loan is conditional sale or a mortgage is ordinarily question of fact.**

Whether an instrument executed to secure loan of money advanced was intended as conditional sale or chattel mortgage is ordinarily question of fact.

3. **Chattel mortgages ⚖188(2)—Automobiles in hands of dealer held "stock of merchandise" within statute voiding mortgages on merchandise exposed for sale (Rev. St. 1925, art. 4000).**

Where automobile, after execution of instrument to secure lenders of money to agents, was to be exhibited in agents' sales rooms and exposed for sale, it was "stock of merchandise" within Rev. St. 1925, art. 4000, voiding chattel mortgages on stock of merchandise which is to be exposed for sale.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Stock of Merchandise.]

4. **Estoppel ⚖70(2)—Lenders of money to automobile dealers to take up draft held estopped to assert ownership as against innocent purchaser from agents.**

Where lenders of money to automobile sales agents to take up draft for price saw automobile after it was driven to agents' place of business, and, without asserting any claim, saw innocent purchaser from agents drive it away, lenders were estopped to assert any claim against him.

Error from District Court, Dallas County; Claude M. McCallum, Judge.

Action by T. A. Helm and another against the Employers' Casualty Company and others. Judgment for plaintiffs, and defendants bring error. Reversed and rendered.

Lawther, Pope, Leachman & Lawther and Neth L. Leachman, all of Dallas, for plaintiffs in error.

Eckford & McMahon, of Dallas, for defendants in error.

BAUGH, J. T. A. Helm and D. M. Craddock sued C. R. Lawrence, C. D. Judd, and A. M. Cox in the district court of Dallas county on December 10, 1924, to recover possession of a Stearns-Knight 6 cylinder automobile, and sequestered said car. It was subsequently replevied by Cox, who executed a $6,000 replevy bond, with the Employers' Casualty Company as surety. Upon final hearing before the court without a jury judgment was rendered in favor of Helm & Craddock against said defendants and the surety on the replevy bond for $2,778.50 and $250 as attorney's fees, from which judgment this writ of error is prosecuted.

The following facts appear: Lawrence & Judd were automobile agents, doing business at 2219-21 Commerce street, Dallas, Tex., under the firm name of the Stearns-Knight Motor Sales Company. Some time about October 10, 1924, A. M. Cox placed an order with them for a model S sport coupé Stearns-Knight car, paid $500 in cash thereon, and delivered to them another car valued at $700. Lawrence & Judd ordered two cars from the factory, which arrived in Dallas about October 27, 1924, under "shipper's order, notify Stearns-Knight Motor Sales Company," and bill of lading with draft attached for the purchase price sent to the American Exchange National Bank. Lawrence & Judd were unable to pay off the draft, and went to Helm to borrow the money to do so. The automobiles were invoiced to the Dallas sales agency. The invoice price on the car in controversy was, f. o. b. factory, $2,367.75. Lawrence & Judd paid the freight. Helm & Craddock, after some solicitation, agreed to take up the draft, but, before doing so, had Lawrence & Judd, on October 28, 1924, execute and deliver to them their note for $2,609, due

In 20 days, being the amount of the invoice price of the car, plus 10 per cent. "brokerage" charged by Helm & Craddock, and all of them entered into a contract which designated Helm & Craddock as sellers and Lawrence & Judd as purchasers, and, omitting formal parts, reads as follows:

"That subject to the conditions and stipulations hereinafter mentioned, sellers sell and deliver to purchasers, the following described motor vehicle, to wit:

"1. Stearns-Knight, six cylinder, model S sport coupé—brown, chassis No. S—2904, body No. 7319, motor No. 22996, car complete with one extra tire; said car situated and located at No. 2219-21 Commerce street in the city of Dallas, Dallas county, Tex., for the sum of two thousand six hundred nine and no/100 dollars ($2,609.00) evidenced by one note of even date herewith, executed by purchasers, payable to the order of sellers at Dallas, Tex., on or before twenty (20) days after date, in the sum of two thousand six hundred nine and no/100 dollars ($2,609.00), said note also having the usual provision for 10% attorney's fees.

"The conditions and stipulations of said sale are as follows, to wit:

"That all title to said motor vehicle is hereby reserved in sellers until said purchase price is fully paid and satisfied, and until said purchase price is fully paid and satisfied, purchasers agree that they will not sell, or incumber, or remove or permit to be removed, the said motor vehicle from its present location without the written consent of the sellers. It is further agreed between the parties hereto that if at any time purchasers shall remove or attempt to remove the said motor vehicle or any part thereof or permit the same or any part thereof to be removed out of Dallas county, where it is now situated, or to secrete or conceal the same from sellers or to incumber, sell, trade or otherwise dispose of the same, or surrender to any other person the possession thereof, or if it be seized under any process of law, or if purchasers shall violate or threaten to violate any of the conditions and stipulations of this contract, or if at any time any part of the said indebtedness shall be past due and unpaid, then, in any of such events, sellers are fully authorized and empowered to immediately take actual physical possession of said motor vehicle wherever it may be found, and in either of such events above enumerated, all of the interest and rights of purchasers in said motor vehicle shall at once and ipso facto terminate· and be null and void.

"Purchasers agree to pay any necessary cost and expense, including a reasonable attorney's fee, incurred by sellers in protecting any and all of their rights and interests herein and hereunder.

"Witness our hands this 28th day of October, A. D. 1924.          T. A. Helm.
          "D. M. Craddock.
          "C. R. Lawrence.
          "C. D. Judd."

This instrument was duly acknowledged and filed by Helm & Craddock as a chattel mortgage at 10 a. m. October 29, 1924. Plaintiffs sued to recover said car, alleging breach of this contract by Lawrence & Judd, in that they sold and delivered said car to Cox, and permitted its removal from their place of business, in violation of the terms of the contract.

Lawrence & Judd defended on the ground that Helm & Craddock were never the owners of said car; that they merely loaned them the money to pay off the draft; that said instrument was intended only as a. chattel mortgage; that said car was sold to Cox with the full knowledge and consent of plaintiffs; and that they were therefore estopped to deny authority in Lawrence and Judd to make such sale.

Cox defended, amongst other things, that he was an innocent purchaser for value, without notice either actual or constructive of the asserted lien or claim of plaintiffs; and that the plaintiffs were estopped by their conduct to claim same as against him.

[1] Numerous questions are raised by plaintiffs in error, but we are of the opinion that two of them conclusively dispose of this appeal, and shall not discuss the others. Under their ninth assignment plaintiffs in error contend that under the undisputed evidence, and that of Craddock and Helm themselves, the transaction above set out was a chattel mortgage and not a conditional sale. We sustain this assignment. Though insisting that they acquired title to the car from the factory by payment of the draft and acquisition of the bill of lading, defendants in error admit that they never had any dealings whatever with the factory; that they never inspected the car, nor had any possession of it or control over it physically; that it was delivered by the railway company to Lawrence & Judd, and that Lawrence & Judd were to sell same in 20 days, and pay off the $2,609 note. On cross-examination Helm testified as follows:

"The first time that I ever laid my eyes on that automobile was when I saw it in the alley back of Lawrence & Judd's, or the Stearns-Knight Motor Sales Company's, place of business. I had never seen the car when I let them have the money. I loaned Lawrence & Judd the money to take up the draft. I charged them what they offered, 10 per cent. for brokerage. They worried me for about two weeks, and finally made a proposition that they would do so and so, and I said, 'All right, if you need it that bad, all right.' I took up the draft on the assurance from those instruments, that the title was in us, and would never pass to Judd or Lawrence; that is what we understood; and that is what we were given to understand from our counsel. We didn't intend to take a mortgage on it. The title of the automobile was for the purpose of securing the note. He got 30 per cent. off of list on these cars, and we only charged him 10 per cent.; in other words, he bought the cars at the factory at a 30 per cent. discount, and we bought it at 10 per cent., and we bought the cars and agreed to sell them back to him less 10 per cent. of the cost; he was not to dispose of them. We never did sell this one; the other I sold myself to Dr. Martin here in town. I told them that we would sell

the car back to them, and sell it in 20 days for that amount of money; that was the purpose of the loan. I figured that we got title to the car by the bill of lading being delivered to us. We only kept that bill of lading 15 or 20 seconds. We talked a little about it, and Craddock, I think, had it in his hands while we were talking, and I don't remember just what the conversation was, but we were talking about the draft and one thing and another. That automobile was sold to me by the Stearns-Knight Company, the shippers. I never saw the Stearns-Knight Motor Car Company or had any dealings with them, but I have heard of them.

"I paid the face of the draft for that car, whatever it was, which was about $2,350. Lawrence & Judd were to sell these automobiles at list price; what that was, I don't exactly know, but I think about $3,500. I didn't know when I was loaning this money. * * * We loaned them that money for 20 days' time. It was our agreement with Lawrence that they were to sell these cars during that 20 days. I knew the conditions of this written instrument, and before the execution of this particular instrument I had loaned them money on other cars."

"All of our transactions were with Lawrence & Judd. I was doing business with Lawrence and Judd. The Stearns-Knight Motor Company meant nothing to me. I never at any time had any intention of dealing with the parent company. I never intended, and never had any idea of, ever purchasing any car from the parent company."

Craddock, the other defendant in error, also testified on cross-examination as follows:

"The subject of loaning Lawrence & Judd, or the Stearns-Knight Motor Sales Company, some money was first mentioned to me by Mr. Helm; that was in October, 1924. * * * I told him it would be agreeable to me if it was to him, if he was satisfied with the security that he would obtain, and that if he could handle the business. It was entirely satisfactory and agreeable to me. He told me the security that he could obtain would be on new automobiles. * * * In loaning money I understood that these cars were to be sold at that place of business; that they were to sell the cars and pay us. Our understanding was, at the time these papers were executed, and at the time we loaned the money, that he was to sell the car and deliver the money to us before the title would be delivered to whoever he sold it to; that Lawrence & Judd were to sell the car and deliver the money to us; that was my understanding of the entire transaction, and I think it was a day or two after the car was unloaded that I found out that Cox had bought this car. * * * We lifted the draft because we thought these papers secured us on that money. We had taken up one draft before. Prior to putting up some money we had never had any negotiations with the parent company, the F. B. Stearns Company, to purchase any automobile from them."

The defendants in error also treated said instrument as a chattel mortgage, and had it recorded as such.

[2, 3] From their own testimony we think the conclusion is inescapable that the money furnished to Lawrence & Judd to pay the draft was a loan to them for that purpose; that Helm & Craddock never purchased said automobile from any one, and never owned it at any time; and that the instrument executed was intended only as security for the loan made, which loan or debt was never extinguished; and that the defendants in error intended that said automobile be offered for sale to the public by Lawrence & Judd. Whether such an instrument was intended as a conditional sale or a mortgage is ordinarily a question of fact for the court or the jury. But one of the essential tests laid down by all the authorities appears to be whether the debt in question was discharged by the conveyance, or whether it was the intention of the parties to continue the debt and secure the same by the instrument executed. If the latter, then it must be construed as a mortgage. The testimony above quoted in our opinion clearly resolves that question against the defendants in error. Article 5489, R. S. 1925; Goodbar & Co. v. Bloom, 43 Tex. Civ. App. 434, 96 S. W. 657; Young v. Blain (Tex. Com. App.) 245 S. W. 65; Watson et al. v. Beall (Tex. Civ. App.) 279 S. W. 543, and cases there cited. Nor can it be questioned that said automobile, after the execution of said instrument, was to be exhibited by Lawrence & Judd in their salesrooms and exposed for sale. That being true, said instrument was in contravention of article 4000, R. S. 1925. It is now well settled that automobiles are merchandise within the purview of that article of the statute. Bank v. Thompson (Tex. Com. App.) 265 S. W. 884; G. M. A. Corporation v. Boddeker (Tex. Civ. App.) 274 S. W. 1016; Texas Bank & Trust Co. v. Teich (Tex. Civ. App.) 283 S. W. 552.

[4] In addition to this conclusion, however, we are of the opinion that the defendants in error are estopped to assert any claim or lien on said car as against Cox. Helm saw the car after it was driven from the railway station to Lawrence & Judd's place of business. He saw Cox looking at it on the afternoon of October 28th, with a view to buying it, and saw him drive the car away, or knew that he did drive it away that day. But he asserted no claim on the car to Cox, and Cox testified that he expressed satisfaction to him at the time that he had bought the car. Cox knew nothing of the instrument in question. It was not filed for record until the next day. Meantime the car had been delivered to Cox by Lawrence & Judd, who had already been paid about $1,900 by Cox on its purchase price. Clearly he was an innocent purchaser for value, without notice of defendants in error's claim, and by their conduct and under their own testimony they are estopped to assert any claim against Cox. Having sued only to recover the property, their debt against Lawrence & Judd is not an issue. For the reasons stated, the judgment of the

trial court is reversed, and judgment here rendered in favor of plaintiffs in error.

Reversed and rendered.