**FOGLE et al. v. GENERAL CREDIT, Inc.**

No. 7693.

United States Court of Appeals for the
District of Columbia.

Decided June 30, 1941.

P. Michael Cook, of Washington, D. C., for appellants.

William R. Lichtenberg, Joseph Luria, and Samuel Barker, all of Washington, D. C., for appellee.

Before MILLER, EDGERTON, and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The principal question presented is whether a recorded chattel mortgage given by an automobile dealer to a finance company, which left the car in the dealer's possession with authority to offer it for sale in the regular course of business but not to complete a sale until the mortgage lien should be satisfied, is valid as against a purchaser having no actual knowledge of the mortgage.

The buyer and the bank which assisted him to finance the purchase were plaintiffs in the trial court. They sought a decree directing the defendant to deliver to them the certificate of title, free and clear of any liens, and adjudging the lien of defendant's mortgage to be void. By counterclaim defendant asked for judgment for $350 with interest, the amount of its lien under the mortgage, or in lieu of this possession of the car or foreclosure of the mortgage lien.

The evidence does not appear in the record. The findings of fact[1] are not in dispute and are as follows:

"On November 30, 1938, Georgetown Motors, Inc., a dealer in new and used automobiles in the District of Columbia, executed and delivered to the defendant, General Credit, Inc., a chattel mortgage in the aggregate amount of $1,005.00, secured on four used automobiles then in possession of said Georgetown Motors, Inc. One of the automobiles included in this chattel mortgage was a 1938 Plymouth Sedan encumbered thereby in the amount of $350.00. This chattel mortgage was duly recorded on December 7, 1938, in the Office of the Recorder of Deeds for the District of Columbia. On December 7, 1938, Georgetown Motors, Inc. assigned and delivered to the defendant the certificate of title to said 1938 Plymouth Sedan, and the defendant retained possession of said certificate until after this suit was filed.[2]

"Georgetown Motors, Inc. retained possession of said automobiles and with the knowledge of the defendant, displayed same on its salesroom floor, for sale to the public, until January 5, 1939. It was agreed between deft. & Georgetown Motors that no sale was to be made until lien in favor of deft. was paid & satisfied.

"On January 5, 1939, the plaintiff James C. Fogle purchased from Georgetown Motors, Inc. the 1938 Plymouth Sedan for an agreed purchase price of $625.00, and in payment thereof delivered to said Georgetown Motors, Inc. his 1934 Plymouth automobile, for which he was given credit in the sum of $225.00, and a cashier's check in the sum of $400.00 drawn by the plaintiff The City Bank to the order of said Georgetown Motors, Inc. The said $400.00

---

1 Upon a former appeal the case was remanded for want of sufficient findings. Fogle & City Bank v. General Credit, Inc., 1940, 71 App.D.C. 338, 110 F.2d 128.

2 During the pendency of the suit, the certificate was delivered to plaintiffs pursuant to an order of court which required this on condition that bond be filed conditioned for the payment of costs and damages which defendant might suffer.

was advanced by the plaintiff The City Bank to the plaintiff James C. Fogle as a loan on account of the purchase price, and was secured by a chattel mortgage on said automobile. Neither plaintiff had actual knowledge of the mortgage.

"The plaintiff James C. Fogle took possession of said automobile under temporary or dealer's tags, and made demand on the said Georgetown Motors, Inc. for the certificate of title, and learning it was in the possession of the defendant, made demand upon it. Georgetown Motors, Inc. never paid or satisfied the lien.

"Georgetown Motors, Inc., on or about January 15, 1939, became insolvent and ceased doing business."

The trial court held that the plaintiffs had notice of defendant's mortgage by operation of law, dismissed their complaint, and gave judgment for defendant against them for $350.

The issues relate to the effects to be given, in the circumstances of the case, to the recording act, Section 177 of Title 25, D.C.Code (1929), and Sections 2 and 3 of the District of Columbia Motor Vehicle Title and Registration Regulations.[3] Plaintiffs say that defendant is estopped by its conduct from claiming the benefit of the constructive notice generally afforded by recording the mortgage. Defendant insists that there is no basis for such an estoppel and that the sale to Fogle was void for failure to comply with the registration regulations.

If defendant's mortgage had not been recorded, the case would be ruled by General Credit, Inc. v. Universal Credit Co., 1938, 69 App.D.C. 80, 99 F.2d 115, and by Associates Discount Corp. v. Crow, 1940, 71 App.D.C. 336, 110 F.2d 126, and Associates Discount Corp. v. Hardesty, 74 App.D.C. —, 122 F.2d 18 (decided May 5, 1941). In the General Credit case the facts were substantially identical with those presented here, except for recording. In holding that the finance company, Universal Credit, was estopped to assert its lien as against a purchaser from the dealer to whom

Universal had given possession with knowledge that the car would be placed in his storeroom and offered for sale in regular course of business, we said:

"The general rule is that the seller of chattels can confer no better title than he himself has, but a recognized exception to the rule is based on estoppel. Thus, if the owner of the chattels stands by and permits another,—particularly a licensed dealer in such chattels,—to hold himself out to the world as owner, to treat the goods as his own, to place them with similar goods in a public show-room and to offer them for sale to the public, he will be estopped by his conduct from asserting his ownership against a purchaser for value and without notice."[4]

In Associates Discount Corp. v. Crow, supra, the facts were substantially identical with those in the Universal Credit case, except that the finance company held the certificate of origin issued pursuant to the Motor Vehicle Title and Registration Regulations and the purchaser from the dealer sued to require the company to deliver the certificate to him. We reversed the District Court's judgment for the plaintiff for want of sufficient findings of fact and remanded the cause in order that they might be made. But the necessary implication of the decision was that a purchaser who acquires title under circumstances like those presented in the Universal Credit case is entitled to have the certificate of origin delivered to him by the lienor who entrusts possession of the car to the dealer for purposes of display for sale in the regular course of business. And this was the clear and explicit ruling in Associates Discount Corp. v. Hardesty, supra.

We think the Associates Discount cases are conclusive against General Credit's argument, advanced first on the appeal, that the sale to Fogle was void because a certificate of title was not assigned to him by Georgetown Motors at the time of the transfer, as required by Section 2 of the Registration Regulations.[5] It is true that those cases involved new cars and "certifi-

---

[3] Promulgated pursuant to the District of Columbia Traffic Act, 1929, 43 Stat. 1119 (1925), as amended 44 Stat. 812 (1926), D.C.Code 1929, T. 6, § 241 et seq.

[4] 69 App.D.C. 80, 81, 99 F.2d 115.

[5] "Certificate of Title Required.—(a) After January 1, 1932, no owner of a motor vehicle or trailer registered in the District of Columbia prior thereto shall operate or permit the operation of such mo-

tor vehicle or trailer on any public highway without first obtaining a certificate of title therefor. (b) After January 1, 1932, no registration card or identification tags for any motor vehicle or trailer shall be issued by the director until the owner thereof shall make application for and be granted a certificate of title for such motor vehicle or trailer. (c) After January 1, 1932, no person shall acquire or dis-

cates of origin" required for such vehicles under Section 3(a) of the Regulations,[6] while this one affects a used car and a "certificate of title" required by Section 2(c). The specific prohibition of Section 3(a) is narrower than that of Section 2(c), in that it is limited to dealers and their acquisition of new vehicles. But the two sections, taken as a whole, are interrelated in other provisions, and we think the fundamental purpose of the two subsections is the same, so that they should be construed consistently with reference to the effect of failure to assign and deliver the required certificate at the time of transfer. In the absence of more substantial difference in the two provisions, we see no persuasive reason for giving greater effect to one than to the other or for adding to the explicit statutory sanctions by avoiding the transfer made in violation of the one prohibition and not doing so as to one made in violation of the other. In Associates Discount Corp. v. Hardesty, supra, we said:

"The only sanction in the District of Columbia laws applicable under the conditions we have here, is that the purchaser cannot use the automobile on the highways of the District of Columbia. The statute provides only that the 'owner' shall first obtain a certificate. But it nowhere provides that he is any less the owner because he fails to do so. In our opinion, the statute does not avoid a contract otherwise valid. Our conclusion, therefore, is that the sale to Hardesty gave him title to the car and that being so, that he has the right to possession of the certificate under the rule implicit in the Crow case."

■ Furthermore, Section 3 specifically provides that no dealer shall "have any used motor vehicle or trailer in his possession unless he shall have a certificate of title for it issued or assigned to him." General Credit, which seeks to take advantage of the prohibition of Section 2 against transfer without assignment of the certificate, cannot be relieved of the burden of this further provision, which we think was directed against exactly the sort of arrangement to which it was a party in this case. The very purpose of the provision appears to have been to prevent

---

pose of any used motor vehicle or trailer within the District of Columbia unless a certificate of title shall have been obtained by the person who disposes of it and shall have been assigned at the time of transfer of ownership of the used motor vehicle or trailer to the person who acquires it. (d) After January 1, 1932, no person shall have any motor vehicle or trailer in his possession on a public highway, knowing or having reason to believe that the owner of it has failed to obtain a certificate of title therefor, except as otherwise provided in these regulations. (e) Anyone convicted of violating paragraph (c) or (d) of this section shall for each such offense be fined not more than $500 or imprisoned not more than 10 days, or both."

6 "Certificate of Origin of Ownership.— (a) After January 1, 1932, no dealer shall acquire a new motor vehicle or trailer unless he obtains at the time of its acquisition such written evidence of origin and ownership and of any liens, encumbrances, or trust agreements existing against said vehicle as may be satisfactory to the director. (b) Within 24 hours of the acquisition of any new motor vehicle or trailer by a dealer he shall submit, on a form furnished by the director, a certificate of origin and ownership and of any liens, encumbrances, or trust agreements existing against said vehicle. This certificate shall be signed in ink by the dealer if a natural person, otherwise by an individual authorized to sign, and verified before a person authorized to administer oaths. When the director is satisfied with the evidence submitted, he will approve the certificate with his signature and the seal of his office, which will allow the dealer to hold the vehicle for resale, display, demonstration, or test, or transfer between terminals and warehouse. Only dealers, banks, or finance companies may assign the above certificate to other dealers, banks, or finance companies, by executing an assignment on a form approved by the director. Such assignment shall in every instance be signed in ink by dealer, if a natural person, otherwise by an individual authorized to sign and verified before a person authorized to administer oaths. After January 1, 1932, no dealer shall have in his possession for more than 72 hours after its acquisition a new motor vehicle or trailer without having a certificate of origin or ownership therefor approved by the director, or such other certificate as may have been approved by the director, or a certificate of title for the motor vehicle or trailer issued or assigned to him, nor shall he have any used motor vehicle or trailer in his possession unless he shall have a certificate of title for it issued or assigned to him. All of the above certificates shall be subject to inspection upon demand of the director or a police officer."

persons holding the certificate from giving possession of the vehicle to a dealer without also delivering the certificate to him, in other words, to prohibit the very thing which General Credit did in this case. We find no merit in the contention that the transfer to Fogle was void for want of delivery of the certificate of title.

■ It remains to consider the most important question, namely, the effect of recording the mortgage. The recording act, Section 177, applies to chattels generally, not merely to automobiles,[7] and is as follows: "Recording of bills of sale, chattel mortgages, and deeds of trust.—No bill of sale, mortgage, or deed of trust to secure a debt of any personal chattels whereof the vendor, mortgagor, or donor shall remain in possession, shall be valid or effectual to pass the title therein, except as between the parties to such instruments and as to other persons having actual notice of it, unless the same be executed, acknowledged, and within ten days from the date of such acknowledgment filed in the office of the recorder of deeds and the said filing of such instrument therein as aforesaid as to third persons not having notice of it as aforesaid shall be operative only from the time within the said ten days when it is delivered to said record."

The weight of authority in other jurisdictions sustains the view that in circumstances substantially identical with or similar to those presented here the constructive notice generally afforded by compliance with the recording act is nullified.[8] Although the facts in some of the cited cases tend more strongly to support application of principles of estoppel or waiver than do the findings in this one,[9] we do not regard the differences as sufficiently substantial to dictate a different result if due account is taken of inferences which we think must be drawn from the findings.[10]

■ It would be sufficient for disposition of the case to rely upon these authorities and the reasons which they assign to support their result. But we add our own approval. The statute is intended ordinarily to make a recorded instrument effective to give constructive notice to all with whom the person in possession may undertake to deal. But the protection is not entirely one-sided or absolute. The statute has another function, namely, to provide an opportunity for investigation of the title and discovery of liens. The two functions are closely related. The opportunity to investigate is the foundation of the constructive notice. When it exists unimpaired by any act of the mortgagee, the statute casts the burden of investigation upon those who may deal with the mortgagor, and their failure to make it assumes something of the quality of negligence. But the statute is a bulwark, not a trap. The mortgagee is favored so long as he acts consistently with the statutory conditions. But when he goes further and either by his conduct prevents the purchaser from making the usual investigation or takes advantage of circumstances which he knows or reasonably should know would have this effect, he destroys the foundation upon which his own protection rests. He cannot throw the purchaser off guard concerning the protection which the statute gives to him and take advantage at the same time of what otherwise would or

---

[7] Accordingly, a construction peculiarly applicable to motor vehicles is not appropriate. Moore v. Ellison, 1927, 82 Colo. 478, 261 P. 461; Boice v. Finance & Guaranty Corp., 1920, 127 Va. 563, 102 S.E. 591, 593, 10 A.L.R. 654.

[8] Moore v. Ellison, 1927, 82 Colo. 478, 261 P. 461; National City Bank v. Adams, 1923, 30 Ga.App. 219, 117 S.E. 285; Denno v. Standard Acceptance Corp., 1931, 277 Mass. 251, 178 N.E. 513; Hostetler v. National Acceptance Co., 1930, 36 Ohio App. 141, 172 N.E. 851; Boice v. Finance & Guar. Corp., 1920, 127 Va. 563, 102 S.E. 591, 10 A.L.R. 654; Southern Wisconsin Acceptance Co. v. Paull, 1927, 192 Wis. 548, 213 N.W. 317. The case of Finance & Guaranty Co. v. Defiance Motor Truck Co., 1924, 145 Md. 94, 125 A. 585, appears to take a contrary view, as do Whitehurst v. Garrett, 1928, 196 N.C. 154, 144 S.E. 835, and Utica Trust & Deposit Co. v. Decker, 1927, 244 N.Y. 340, 155 N.E. 665.

[9] As by disclosing an established course of conduct between the mortgagor-dealer and the mortgagee, Hostetler v. National Acceptance Co., 1930, 36 Ohio App. 141, 172 N.E. 851; or previous instances of sale without notice to or consent of the mortgagee, Denno v. Standard Acceptance Corp., 1931, 277 Mass. 251, 178 N.E. 513; or that the mortgagee knew that the mortgagor was to pay the mortgage out of the proceeds of the sale, Southern Wisconsin Acceptance Co. v. Paull, 1927, 192 Wis. 548, 213 N.W. 317.

[10] E. g., the usual practices of automobile dealers in arranging for transfers of title and registration, as well as licensing. Cf. text infra.

might have been discovered. Thus, if the mortgagee clothes the mortgagor with the indicia of ownership,[11] or gives him authority to sell the property,[12] or stands by in silence and watches the mortgagor deal with it as owner,[13] he nullifies the effect of recording by his inconsistent representation.

Had the mortgage involved here contained a power of sale, the statutory notice would have been nullified. Within the authorities which have been cited, the same consequence follows when the circumstances are such that they would create an apparent authority to sell in the mortgagor.[14] Actual power of sale is not required, nor is strict estoppel.[15] When, in addition to possession, other facts known to the mortgagee or acts done by him are such that prospective purchasers would be led reasonably to believe that the mortgagor has power to sell the property, the effect in throwing the purchaser off guard and preventing investigation of the title records by him is the same as if there were actual authority to sell known to the purchaser or indicia of ownership given to him.

 The circumstances here are of that character and had that effect. Georgetown Motors was a dealer. Its business was selling cars—and buying them. It does not appear that it had any other. The car was delivered to it with the intention that it be offered for sale, that is, that it be placed in the dealer's stock in trade to all appearances as part of it, in the dealer's regular display room, without any notice or warning that it was subject to lien held by another, though this might easily have been attached,[16] and that it be shown to customers in the regular course of trade. It is common knowledge that dealers frequently, if not always, take care of title transfers and registration, as well as licensing, as part of the transaction of sale, often completing these matters after receiving payment and making delivery. The dealer here was more than mortgagor in possession. He was agent for bringing about a sale. The circumstances were such that prospective purchasers naturally would be thrown off inquiry and it is not unreasonable to infer that defendant must have known that this was likely to occur. Furthermore, as we have said above, both the dealer and defendant were parties to a violation of the registration regulations in making such an arrangement without having the certificate of title placed in the dealer's possession. Had they obeyed the regulation, the purchaser would have been entitled to rely upon the certificate as showing ownership in the dealer or would have been given actual knowledge by it concerning defendant's lien. As against such a violation and facts so disarming, we think the constructive notice which recording would have given in their absence must be held ineffective. It strengthens this conclusion that it brings the recording act and the registration regulations into harmony.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

[11] As when the title registration is permitted to remain in the mortgagor's name, cf. Winakur v. Sapourn, 1929, 156 Md. 662, 145 A. 342.

[12] As when the mortgagee authorizes or permits the mortgagor to discharge the mortgage by paying the amount due from the proceeds of sale, cf. Denno v. Standard Acceptance Corp., 1931, 277 Mass. 251, 178 N.E. 513; Hostetler v. National Acceptance Co., 1930, 36 Ohio App. 141, 172 N.E. 851; Southern Wisconsin Acceptance Co. v. Paull, 1927, 192 Wis. 548, 213 N.W. 317.

[13] Cf. Employers' Casualty Co. v. Helm, Tex.Civ.App.1927, 295 S.W. 955. See also Winakur v. Sapourn, 1929, 156 Md. 662, 145 A. 342.

[14] Cf. note 8 supra. Some of the cases speak in terms of "indicia of ownership." Examination of the facts shows that this does not refer to technical investiture of legal title in the mortgagor, as by placing registration in his name or delivering to him a certificate of title made in his name. Delivery of possession to a dealer with knowledge that he will offer the car for sale in the regular course of business as apparently a part of his stock in trade appears to be what is meant by giving him "indicia of ownership."

[15] Cf. Denno v. Standard Acceptance Corp., 1931, 277 Mass. 251, 178 N.E. 513, 515.

[16] Cf. Hostetler v. National Acceptance Co., 1930, 36 Ohio App. 141, 172 N.E. 851, 852.