SMITH, KIRKPATRICK & CO., Inc., et al., Plaintiff,

v.

CONTINENTAL AUTOS, LTD., et al., Defendant.

Civ. A. No. 3077–59.

United States District Court
District of Columbia.

June 27, 1960.

Jan M. Z. Kaczmarek, Washington, D. C., for plaintiff.

Samuel Barker, Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

Smith-Kirkpatrick and Company, Inc., a New York corporation engaged in the financing of import and export trade, has brought suit against Continental Motors, Ltd. and others, for the replevin of eighty-seven automobiles. Maryland Credit Finance Corporation, a Maryland corporation engaged in the financing of automobile sales by retail dealers, holds conditional sales contracts on five of these eighty-seven automobiles and has been granted leave to file a complaint in intervention to demand judgment for possession of and the title documents to these automobiles.[1]

The case is before the Court on a motion by Maryland Credit for summary judgment. The facts are stipulated.

Early in 1959, Smith-Kirkpatrick and Continental agreed to a "floor-plan" arrangement for the financing by Smith-Kirkpatrick of a number of automobile purchases by Continental. Under this "floor-plan" arrangement, Smith-Kirkpatrick would advance funds to Continental for the purchase of automobiles and would take back from Continental promissory notes secured by chattel mortgages on the automobiles along with the automobiles' title documents.[2] The mortgages would then be recorded in the District of Columbia pursuant to the general recordation statute, D.C.Code, § 42–101 (1951 ed.).[3] When Continental repaid Smith-Kirkpatrick, the latter would send Continental the title documents.

1. A 1959 Triumph, 1959 Morreti, 1959 Goliath, 1960 Toyopet, and 1956 Morgan. The Morreti was taken under Smith-Kirkpatrick's writ of replevin. The other four were not found—they are in the possession of the purchasers.

2. In the case of a new automobile, the title document would be the manufacturer's certificate of origin; in the case of a used automobile, it would be a certificate of title.

3. D.C.Code, § 42–101:
"No bill of sale, mortgage, or deed of trust to secure a debt of any personal chattels whereof the vendor, mortgagor, or donor shall remain in possession, shall be valid or effectual to pass the title therein, except as between the parties to such instruments and as to other persons having actual notice of it, un-

less the same be executed, acknowledged, and within ten days from the date of such acknowledgment filed in the office of the recorder of deeds and the said filing of such instrument therein as aforesaid as to third persons not having notice of it as aforesaid shall be operative only from the time within the said ten days when it is delivered to said recorder."

D.C.Code, § 40–702, effective January 1, 1941, reads:
"During the time a certificate is outstanding for any motor vehicle or trailer, no lien against such motor vehicle or trailer or any equipment or accessories affixed or sold to be affixed thereto shall be valid except as between the parties and as to other persons having actual notice, unless and until entered on such certificate as hereinafter set forth: *Pro-*

On June 4, 1959, in accordance with the above procedure, Smith-Kirkpatrick advanced $2,000 to Continental upon a 1959 Goliath automobile, receiving Continental's note and chattel mortgage and the Maufacturer's Statement of Origin. Smith-Kirkpatrick filed the chattel mortgage in accordance with D.C.Code, § 42–101.

The Goliath was placed in Continental's regular stock for sale to the public and a few months later was sold to Marcus M. Henson. Henson paid a small amount in cash, was given an allowance for a trade-in and executed a conditional sales contract for the balance.

Continental then sold this contract to Maryland Credit, under an arrangement whereby Maryland Credit would purchase a conditional sales contract from Continental who would then pay Smith-Kirkpatrick, secure from it the title document, present the title document along with the conditional sales contract to the title office, receive from the title office the certificate of title with Maryland Credit's lien noted thereon, and then send the certificate along to Maryland Credit. Thus, Maryland Credit's lien would be recorded in compliance with D.C.Code, § 40–702.[4]

In Henson's case,[5] after he took possession of the Goliath, his contract was assigned to Maryland Credit but Maryland Credit did not receive the title certificate because the dealer, Continental, had financial difficulties; Continental did not pay Smith-Kirkpatrick the $2,000 which it owed and so Smith-Kirkpatrick did not release the certificate of origin. No certificate of title has issued and Maryland Credit's conditional sales contract has not been recorded.

■ Maryland Credit and Smith-Kirkpatrick have stipulated that "the sole question of law presented in connection with the present Motion for Summary Judgment is whether recordation of a chattel morgage upon an automobile held by a car dealer for sale to the public constitutes notice of the mortgagee's rights under D.C.Code, § 42–101 as to a subsequent purchaser from the dealer of a conditional sales contract covering the same automobile." But the agreed upon facts and the nature of the case belie the stipulation—its formulation of the "sole question of law" is, in the Court's opinion, incorrect. A stipulation as to the facts involved is one thing; a stipulation as to the legal issues, quite another—the litigants cannot impose upon the Court their concept of the legal issues involved.

■ This is a replevin action and it is basic that the plaintiff in such an action cannot recover on the weakness of the defendant's title; to recover, *the plaintiff* must have a right to immediate possession of the property at the commencement of the action. D.C.Code, § 16–1801; Notes v. Snyder, 1925, 55 App. D.C. 233, 234, 4 F.2d 426, 427, 41 A.L.R. 1052.

■ It is agreed that the purchaser of the automobile, Henson, had no actual knowledge of Smith-Kirkpatrick's lien at the time of his purchase. Further, Smith-Kirkpatrick's recordation of its

---

*vided* * * * The provisions of §§ 42–101 to 42–103, of the Code of Laws of the District of Columbia shall not apply to liens recorded as herein provided and a lien shall have no greater validity or effect during the time a certificate is outstanding for the motor vehicle or trailer covered thereby by reason of the fact that the lien has been filed in accordance with said sections or * * *."

A "certificate" is defined by § 40–701 as "a certificate of title for a motor vehicle or trailer issued by the director." Thus, the Recorder's office will not record floor-plan liens on new automobiles un-

der § 40–702 since there would be no certificate of title outstanding.

4. Set forth in note 3.

5. Smith-Kirkpatrick and Maryland Credit have stipulated that the facts are similar with respect to the other four automobile purchases. This is not quite accurate since one of the automobiles—the Morgan—is a used automobile, whereas the other four are new, and since one—the Morreti—is in the possession of Smith-Kirkpatrick, whereas the other four are in the possession of the purchasers.

lien under § 42–101 did not invest Henson with constructive knowledge; as against Henson, Smith-Kirkpatrick is estopped from asserting its lien. Fogle v. General Credit, 1941, 74 App.D.C. 208, 122 F.2d 45, 136 A.L.R. 814.[6] Smith-Kirkpatrick appears to agree with this much but goes on to say that as far as Maryland Credit is concerned—it being a finance company, well aware of the floor-plan practice—Fogle does not obtain and therefore it (Smith-Kirkpatrick) has priority over Maryland Credit. But priority for what? This is not a bankruptcy action; nor is it a case where the conditional vendee has defaulted and the conditional vendor has repossessed the automobile. It has not been suggested that the purchasers are in default. That being so, they are entitled to the use and enjoyment of their automobiles which is not possible without registration. D.C.Code, § 40–102 (1951 ed.). Registration is not possible without the documents now in the possession of Smith-Kirkpatrick. Traffic and Motor Vehicle Regulations for the District of Columbia §§ 7, 18(d). There is no authority for Smith-Kirkpatrick to withhold these documents and thus prevent the purchasers from using their automobiles. "[T]itle to the car, acquired by estoppel, carries with it a right to possession of the certificate." Associates Discount Corp. v. Hardesty, 1941, 74 App.D.C. 44, 45, 122 F.2d 18, 19.

As to each automobile, therefore, the certificate must be surrendered to Maryland Credit so that the automobile may be registered and Maryland Credit have its lien recorded on the certificate of title —the only lien which is presently valid against the purchaser. Maryland Credit would then be permitted to retain the certificate until its lien is satisfied. D.C. Code, § 40–710 (1951 ed.); Traffic & Motor Vehicle Regulations for the District of Columbia § 8(b).

Motion granted. Counsel shall submit order.

6. D.C.Code, § 40–702 was not discussed in Fogle because the statute was not retroactive and the lien involved in Fogle had been acquired prior to the effective date of the statute.