Abraham N. Geller, J.
This action for conversion of a front-end-loader, a piece of heavy construction equipment, involves a question of priority as between defendant manufacturer (Pettibone Mulliken), holder of a first but unfiled mortgage, and plaintiff finance company (U. M. & M.), holder of a subsequent mortgage on the same equipment. In addition to various defenses raising issues as to U. M. & M.’s title and rights, Pettibone Mulliken asserts a right to priority by virtue of its respossession of the loader through the voluntary act of the dealer to whom it had sold it and who had given it a mortgage to secure the payment of the purchase price.
Pettibone Mulliken sold and delivered the loader in October or November, 1959 to an Ohio dealer in such equipment. A “ floor plan ” mortgage and promissory note for the purchase price of $17,388.72 to be signed by the dealer were allegedly sent along at that time, but, for some unexplained reason, these documents were not executed until several months later, stating the date as April 11, 1960. A floor-plan mortgage expressly authorizes the mortgagor to sell the equipment in the ordinary course of business and provides that the proceeds be held in trust and used to satisfy the debt in full within a stipulated time thereafter. Pettibone Mulliken did not then or at any time thereafter file the mortgage.
On May 2, 1960, U. M. & M., which had had many similar financing transactions with this dealer, issued its check to him for the full amount, less discount, in consideration of his indorsement of a negotiable promissory note and assignment of a chattel mortgage dated April 23, 1960 executed by a purchaser on time payments of this article. It is undisputed that U. M. & M. had had no knowledge of the floor-plan mortgage, nor of any facts indicative of any irregularity or impropriety in the alleged sale and mortgage transaction between the dealer and his customer. The note and mortgage were U. M. & M. ’s own printed forms, with a bill of sale as an integral part thereof, all properly filled in to show the details of the sale to the customer and his execution of the note and mortgage to the dealer. The dealer’s indorsement of the negotiable note and his assignment of the mortgage to U. M. & M. were also in proper form. No question has been raised as to the authenticity of the signatures of the customer and dealer. U. M. & M. had previously financed a transaction in this line of business involving this customer. It ascertained that the credit ratings of both were favorable, accepted the note and mortgage and issued its check. However, it did not “ forthwith ” record that mortgage.
*637 The customer testified that the understanding was that he would send a truck around to pick up the loader when he was ready to use it. Whether that be true or whether, as Pettibone Mulliken claims, the entire transaction between dealer and customer was fictitiously contrived in order to obtain moneys for both of them from U. M. & M., the fact is that the loader remained in the dealer’s yard for only about two weeks thereafter and was then delivered by the dealer to Pettibone Mulliken’s plant. This was promptly after default by the dealer in the payment of the first installment stated to be due May 11,1960 on Pettibone Mulliken’s note.
The following month, upon default in the first installment on the note held by it, U. M. & M. recorded its mortgage. Shortly thereafter, as one would expect under such circumstances, insolvency proceedings were instituted by creditors against the dealer and a receiver was appointed. U. M. & M. ascertained that Pettibone Mulliken had possession of the loader and instituted this action.
The parties agree that the law of Ohio is controlling on the question of the validity and priority of their respective chattel mortgages given in that State upon property therein. Expert testimony by Ohio attorneys as to the applicable law of that State was offered by each side in support of their opposed positions. The court has been obliged to supplement such testimony and the briefs submitted by counsel by independent research. Surprisingly, there does not appear to be a case on all fours in Ohio — i.e., on the question of priority as between the holder of a prior but unfiled chattel mortgage who has become repossessed of the chattel and the holder of a subsequent mortgage on the same chattel executed during the intervening period. However, interpretation of the governing Ohio statute and cases in this field compel, in the court’s view, a decision in favor of TJ. M. & M., the holder of the subsequent mortgage.
Section 1319.01 of the Ohio Revised Code provides that a chattel mortgage which is not accompanied by an immediate delivery and followed by an actual change of possession of the chattel to the mortgagee ‘1 is void as against the creditors of the mortgagor, subsequent purchasers, and mortgagees in good faith,” unless the mortgage is forthwith recorded. It was said in Day v. Munson (14 Ohio St. 488 [1863]), that this statute had been mainly copied from the New York statute (now Lien Law, § 230). The statutes on this subject of all the States are substantially similar.
Under such a statute, if the mortgagee permits possession to remain in the mortgagor, it is incumbent upon him to record his *638 mortgage to protect Ms lien as against the three classes specified in the statute. Recordation permits any such person, who seeks security in connection with an extension of credit or transfer of funds, to check whether the chattel is subject to any incumbrance. The rationale underlying the statute is that, as between the classes specified and a prior mortgagee who has failed to record his mortgage, the loss should fall on the latter, who placed the mortgagor in a position of apparently unrestricted ownership and thus enabled him to perpetrate a fraud.
The language of the statute is clear. An unrecorded chattel mortgage is nevertheless valid as between the parties thereto and as to all persons other than those specified in the statute. A “ subsequent ” purchaser or mortgagee is quite evidently one whose interest attaches subsequent to the execution of the prior mortgage. (Day v. Munson, supra.) The statute imposes but a single condition to give a subsequent mortgagee priority over a prior unrecorded mortgage, i.e., good faith. Thus, a subsequent mortgage taken in good faith, although not itself recorded, has priority over a prior unrecorded mortgage, since it is the latter which is declared to be void with respect to the former. Although the subsequent unrecorded mortgage is void as against later purchasers and mortgagees in good faith, its validity and priority with respect to a prior unrecorded mortgage is not affected.
Accordingly, the affirmative defenses based upon alleged defects in the instrument finally recorded by U. M. & M. are unavailing. The sole issue as to TJ. M. & M. ’s title and rights is the question of its good faith.
Pettibone Mulliken has attempted to impeach TJ. M. & M.’s title by means of entries in the books of account of the dealer, purporting to show that the sale to this customer was a fictitious transaction and that the moneys obtained from TJ. M. & M. were split between the dealer and the customer. These entries, presumably made by the dealer, are not binding on any other person. The customer was produced as a witness. While his testimony indicated that the dealer had deceived him as to the sales price by having him sign copies bearing different amounts without giving him a copy, he maintained that the transaction was a sale to him with delivery at a convenient later date and that he signed the note and mortgage for the dealer in connection with such sale.
However, regardless of the actual nature of the understanding between dealer and customer, the question here is as to the good faith of U. M. & M., which paid value in consideration of the *639 dealer’s indorsement of the customer’s negotiable promissory note and his assignment of the chattel mortgage given to secure the payment thereof.
It is clear that U. M. & M. acquired these instruments, regular and complete on their face, in the ordinary course of its business, for value, and without notice of the prior mortgage or knowledge of any infirmity or defect relating to the transaction. Its good faith is therefore established. Indeed, its good faith is less vulnerable to attack than that of Pettibone Mulliken, which purportedly secured the execution of a floor-plan mortgage more than 5 months after sale and delivery and about 10 days before the execution of this subsequent mortgage, and proceeded to make arrangements to secure repossession promptly upon default date 30 days later.
Although earlier Ohio cases apparently held that a chattel mortgage did not partake of the negotiable character of the accompanying promissory note and was therefore subject to equities and defenses available to the original parties, it is now settled that a bona fide holder in due course is entitled to take free from all latent equities not only as to the negotiable note but also as to the mortgage, which is a mere incident to the note (First Nat. Bank of Wapakoneta v. Brotherton, 78 Ohio St. 162; Ashland Bldg. & Loan Co. v. Kerman, 23 Ohio App. 127; Dennis v. Rotter, 43 Ohio App. 330). Indeed, the later Ohio cases indicate an unusual concern for a subsequent innocent purchaser for value (see La Flash v. Tiger, 93 Ohio App. 474; Hostetler v. National Acceptance Co., 36 Ohio App. 141). In Hostetler a purchaser of an automobile in a dealer’s salesroom, without actual notice of a floor-plan mortgage which had been recorded by a finance company, was held entitled to retain it free of the mortgage, since the finance company had failed to place any warning tags on such cars and had allowed them to be offered for sale by the dealer mortgagor to the public without restriction and it should therefore bear the loss as the one who made possible the fraud of the dealer. Hostetler is cited to show the length to which the Ohio courts go in protecting innocent purchasers for value. In this case, involving such type of equipment, as to which a purchaser or mortgagee should be charged with the duty to search the records for prior incumbrances, recordation by Pettibone Mulliken of its mortgage would have sufficed to accord it priority.
(U. M. & M. thus qualifies as a subsequent mortgagee in good faith within the meaning of the statute and on that basis is entitled to priority over Pettibone Mulliken’s prior unrecorded *640 mortgage. But, asserts Pettibone Mulliken, its later repossession through the voluntary act of its mortgagor independently conferred the right to possession as against the intervening mortgage which had not been recorded.
It is stated, as a general proposition, that an unrecorded chattel mortgage is valid and effective as against all persons if the mortgagee acquires possession before the rights of third persons attach. (71 A. L. R. 2d 1416 et seq.) The cases in this field applying Ohio law have involved solely the question of priority as between a chattel mortgagee and creditors of the mortgagor. The settled rule under Ohio law is that if the mortgagee, even of an unrecorded mortgage, takes possession before any creditors have acquired a lien on the chattel by levy of execution or attachment, his lien and right to possession must be recognized (Francisco v. Ryan, 54 Ohio St. 307; Boyer v. Knowlton Co., 85 Ohio St. 104; Matter of Schilling, 251 F. 972). In New York, it may be noted, there are conflicting decisions on this point, the rule apparently being more favorable to creditors. Some early cases distinguish between such a mortgagee who, before any lien is acquired by creditors through a levy, takes possession under the assumed authority of the unfiled mortgage and one to whom the mortgagor delivers possession voluntarily; in the former instance, it is held that the void mortgage confers no right, while in the latter, the right to possession is held to be validly based on the independent obligation of the underlying debt (Stephens v. Perrine, 143 N. Y. 476; Bowdish v. Page, 153 N. Y. 104).
¡Unfortunately, there seems to be no reported case in Ohio or New York dealing with this fact pattern — priority as between the holder of an unrecorded chattel mortgage who secures possession of the chattel after the execution and prior to the recording of a subsequent mortgage on the same chattel. That subject has been annotated in 54 A. L. R. 2d 936 et seq. It appears' therefrom that the few cases on that precise issue in other jurisdictions are in conflict, but analysis of the annotation as a whole and the trend of decisions in Ohio lead to the conclusion that the just and logical principle is that the holder of a prior unfiled chattel mortgage has no right of possession after a lien against the chattel has attached, whether it be by a creditor’s levy or by the acquisition of a right of possession therein by a subsequent purchaser or mortgagee in good faith as the result of the execution in his favor of a bill of sale or mortgage. A superior right to possession, though inchoate, is acquired by a subsequent mortgagee in good faith at the moment of the execution and delivery of his mortgage, *641 inasmuch as the governing statute plainly states that the prior unrecorded mortgage is void as against a subsequent mortgagee in good faith.
Moreover, there is no warrant on these facts for Pettibone Mulliken’s assertion of a right to possession based on the dealer’s voluntary delivery of the loader. The dealer then had no right or interest whatever in the article. He had executed a bill of sale and assigned the mortgage securing payment of the price, thereby divesting himself by his own act of all interest therein. He is estopped from taking any steps in derogation of the rights of U. M. & M., the innocent party in that transaction, and Pettibone Mulliken’s claim to possession through him as against U. M. & M. is without any basis in law or fact.
Finally, to permit the holder of an unrecorded mortgage to obtain priority over a subsequent mortgagee in good faith by the mere expedient of securing possession from a mortgagor whose fraud has caused the entire controversy, would nullify the intent of the statute. Clearly the loss should fall on the one whose acts have made possible the fraud perpetrated on the other.
U. M. & M. is accordingly entitled to recover. Pursuant to the stipulation of the parties as to the amount, judgment is directed to be entered for the sum of $17,444.08, with interest from May 20, 1960.