13927.  NATIONAL CITY BANK OF ROME, GEORGIA, *v.* ADAMS.

JENKINS, P. J. 1. In this State a valid mortgage may be created upon a stock of goods and merchandise exposed for sale in the regular course of business (Civil Code of 1910, § 3256); but a mortgage upon certain articles particularly described therein, though valid as such, is not a mortgage upon a stock of goods changing in specifics, so that the lien would be lost upon such mortgaged articles as might be disposed of in the regular course of trade.

2. Except as to negotiable paper, it is the general rule that a seller can convey only such title as he himself owns, and that property included within the lien of a duly recorded mortgage remains subject thereto against the claims of a subsequent bona fide purchaser for value without actual notice or knowledge of such lien; but where the sale by the mortgagor is effected under and by virtue of an express or clearly implied authority from the mortgagee, the purchaser is protected, so far as the right of such consenting mortgagee is concerned,

and the latter must look to the one whom he himself has thus selected and entrusted to account for the proceeds arising under such an authorized sale.

3. Where, by the agreed statement of facts, the lien of a mortgage upon certain particularly described articles was taken with the knowledge and intent on the part of the mortgagee that such particular articles would become a part of the mortgagor's stock of goods, and, as such, " would be exposed and offered for sale to the general public" in the ordinary course of trade, the record of the mortgage would not defeat the title of a subsequent purchaser, acquired from the mortgagor in the usual course of trade, unless such purchaser was a party to a fraudulent disposition of the proceeds arising thereunder, since it is not incumbent upon such a purchaser to see to the proper application of the purchase-money by the mortgagee's agent; but the mortgagee, by the grant of such authority, having assumed the risk of his agent's want of fidelity, must look to him, and upon the breach of the trust thus imposed the one entrusting him must suffer the loss. Civil Code (1910), § 4537. Nor would the rule be different by reason of the further provision contained in the agreed statement of facts that the mortgagor " had no authority from the [mortgagee] to sell the [article in question] free from the lien of the mortgage." Such latter provision can not be taken to dispute or disclaim the mortgagor's right and authority to sell, but, on the contrary, presupposes such authority, and, consequently, this provision, when taken in connection with the preceding portion of the agreed statement of facts, must be taken to mean that the mortgagee did not extinguish his lien for the benefit of the mortgagor, but that as between themselves the latter would be accountable to the one who had trusted him for a proper disposition of the proceeds arising from such an authorized sale. It can not properly be taken to mean that the holder of the lien, after giving to the mortgagor an express authority to sell or by conferring such evidence of the right of disposition " as according to the custom of trade or the common understanding of the world usually accompanies the authority of disposal" (Civil Code, § 4537), can nevertheless require that all persons acting upon such invitation by dealing with the agent in his authorized capacity shall make good to the principal any loss which he has suffered on account of the agent's dereliction in duty in failing to account for the proceeds of such authorized sale.    See also: *Crenshaw* v. *Wilkes*, 134 *Ga.* 684, 687 (68 S. E. 498) ; *Mason* v. *Farmers Cotton Oil Co.*, 29 *Ga. App.* 418 (116 S. E. 123), case note in 8 L. R. A. (N. S.), 404; *Boice* v. Finance Corp., 127 Va. 563 (102 S. E. 591, 10 A. L. R. 654).

<em>Judgment affirmed. Stephens and Bell, JJ., concur.</em>

DECIDED APRIL 18, 1923.

Levy and claim; from city court of Cartersville—Judge Townsend.   July 22, 1922.

Application for certiorari was denied by the Supreme Court.

The judge to whom the case was submitted found in favor of the claimant, upon the following agreed statement of facts:

" On November 19, 1920, I. M. Adams, the claimant in the above-stated case, bought from the defendant, the Taff Motor Company, one seven-passenger Studebaker Big-Six automobile, motor number 19330, in the city of Rome, Georgia, and paid therefor the sum of $2,200 in cash and another automobile, and immediately took possession of said automobile. The said Taff Motor Company had previously given the mortgage foreclosed in said case, on the four automobiles therein described, among them being the automobile to which I. M. Adams has filed his claim in this case, which mortgage was duly recorded, to secure a loan of money obtained from the National City Bank of Rome, Georgia. The loan was not paid, and the National City Bank foreclosed its mortgage, and thereupon I. M. Adams filed this claim to the above-described automobile. At the time I. M. Adams bought said described automobile from the Taff Motor Company he did not know nor did he have actual knowledge of the mortgage of the National City Bank on said automobile. For about a year or more before November 19, 1920, J. C. Taff, doing business as Taff Motor Company, had been operating an automobile business on Broad street, Rome, Georgia, and had a salesroom where he displayed new and second-hand automobiles for sale, and during this time he was agent for Studebaker automobiles in Rome, Georgia. The business of the Taff Motor Company was located in the same block with that of the National City Bank, the plaintiff, and within one hundred yards from the building in which the bank of the plaintiff was located. In the month of October, 1920, the Taff Motor Company ordered four automobiles from the Studebaker Company, one of the automobiles being the automobile here in controversy, which the company shipped with bill of lading attached. When these automobiles arrived in Rome, for the purpose of securing the draft and bill of lading from the bank so as to get possession of same from the railroad, the Taff Motor Company gave to the National City Bank . . the mortgage in question on said automobiles, and secured from said Bank $4,727.40, and took said money and paid for said automobiles and took possession of them, and carried them to the place of business of the Taff Motor Company, as aforesaid, and there placed said automobiles on display for sale, said mortgage of said National

City Bank being of the date of October 8, 1920, and duly recorded on the same date.

"Upon the Taff Motor Company securing possession of the automobile in controversy, said automobile was placed in the showroom of the Taff Motor Company on Broad Street, Rome, Georgia, as aforesaid, for the purpose of attracting purchasers and being sold. About a week before I. M. Adams bought said automobile, the Taff Motor Company began to exhibit said automobile to claimant. Claimant, with the agents and employees of the Taff Motor Company, rode up and down Broad street and in front of the place of business of the National City Bank for several days, until finally, on November 19, 1920, I. M. Adams bought the automobile in controversy, and paid him in cash and trade for the same at the time of purchase, but at that time had no actual knowledge of the existence of the mortgage of the National City Bank. Prior to the execution of the present mortgage the National City Bank had on several occasions loaned to the Taff Motor Company money on automobiles, in the same manner that a loan was made on the automobile in question, and all of these automobiles so mortgaged had been placed in the showroom of the Taff Motor Company on Broad street, for the purpose of exhibition and sale, in the same manner as the automobile in question. Theretofore, when loans were made on automobiles by the bank to the Taff Motor Company, upon the sale of such automobiles by the Taff Motor Company the proceeds of the sale were duly turned over to the National City Bank, and the mortgages extinguished. All the automobiles mortgaged by the Taff Motor Company to the National City Bank on October 8, 1920, were disposed of by the Taff Motor Company, and none of the proceeds from the sale of said automobiles was turned over to the National City Bank. These automobiles were all disposed of about the same time that the claimant bought the automobile in controversy. When the National City Bank foreclosed said mortgage on the automobile in question, the other three automobiles had been disposed of by the Taff Motor Company, and the whereabouts of said automobiles were not known. At the time the Taff Motor Company negotiated said loan on said automobiles, the bank knew of the place of business of the Taff Motor Company, and knew that the Taff Motor Company were licensed dealers in automobiles, and that said auto-

mobiles would be exposed and offered for sale to the general public by being placed in a showroom of the Taff Motor Company, and knew that said money so secured by the Taff Motor Company was being advanced to the Taff Motor Company for the purpose of paying a sight draft for said automobiles, so that said automobiles might be turned over to the Taff Motor Company, and taken to the place of business of the Taff Motor Company on Broad street in the city of Rome, and there placed on exhibition and sold to the general public. The Taff Motor Company's place of business was on the principal street of the city of Rome, and had a large salesroom, from which active business in the selling of automobiles was carried on. Taff Motor Company had no authority from the National City Bank of Rome, Georgia, to sell this automobile, or others, free from the lien of the mortgage. There were several other automobiles in stock, and a general stock of parts, accessories, greases, oils, etc."

*Paul F. Akin, Willingham, Wright & Covington,* for plaintiff.
*Porter & Mebane,* contra.