### 29406. GERNAZIAN v. HARRISON.

DECIDED FEBRUARY 28, 1942.

*McElreath, Scott, Duckworth & Riley,* for plaintiff in error.
*Hirsch, Smith, Kilpatrick, Clay & Cody,* contra.

FELTON, J. Walter B. Harrison instituted a trover suit against Dr. Stephen Gernazian to recover a Plymouth automobile and hire. A judge of the civil court of Fulton County, trying the case with-

out a jury, found for the plaintiff. The defendant excepted to the overruling of his motion for new trial.

Those parts of the agreed statement of facts material and necessary for a consideration of the case are as follows: "1. Wallace Motor Company was a corporation operated by H. C. Wallace, as secretary and general manager, in Millen, Jenkins County, Georgia. Said Wallace Motor Company was regularly engaged on January 11, 1941 in the business of selling automobiles produced by Chrysler Motor Company, and particularly Plymouth automobiles. 2. On January 11, 1941, Walter Harrison loaned to Wallace Motor Co. the sum of $725, which loan was secured by a deed to secure debt transferring one 1941 Plymouth four-passenger coupé, motor No. P12-24248. Said bill of sale to secure debt transferred all right, title and interest of Wallace Motor Co. to Walter Harrison to secure said obligation. 3. Said bill of sale to secure debt was recorded in accordance with the law in the records of Jenkins County, Georgia, being recorded in the Mortgage Record 46, folios 321 and 322, and having been recorded on the 13th day of January, 1941. . . 6. The loan made by Walter Harrison to Wallace Motor Co. was made for the purpose of financing the above described Plymouth coupé which was to be sold by Wallace Motor Co. in its regular business of selling automobiles. 7. On or about the 24th day of January, 1941, H. C. Wallace removed the said Plymouth automobile from the storeroom of Wallace Motor Co. at Millen, Ga., and brought said automobile to Atlanta, Ga.; the purpose of the trip was to deliver a new automobile to a customer. Said automobile when brought to Atlanta did not have a dealer's tag on it, but had on it a regular Georgia automobile license tag for the year 1940, being tag No. X23-654, being the license tag bought for this car by J. B. Cox, former associate in Wallace Motor Co., and the speedometer showed 7500 miles. The car belonged to Wallace Motor Co. [at] time of sale to defendant, and J. B. Cox had no interest. 8. While in Atlanta with said Plymouth, H. C. Wallace contacted Dr. Stephen Gernazian professionally for the purpose of having his eyes examined. Dr. Stephen Gernazian did not know that the said H. C. Wallace was a dealer in automobiles until that time, nor did the said Dr. Stephen Gernazian know the said H. C. Wallace prior to that time. 9. On the 24th day of January, 1941, the said Dr. Stephen Ger-

nazian purchased the said Plymouth from Wallace Motor Co. and paid for the automobile the sum of $865. . . 11. On or about the 15th day of March, 1941, Walter Harrison discovered that said automobile had been removed from the premises of the Wallace Motor Co. in Millen, Ga., and shortly thereafter located said automobile in the City of Atlanta, and at that time did not know that the automobile had been sold by Wallace Motor Co. 12. Upon discovery of the automobile said Walter Harrison caused to be brought this trover action, claiming title and possession thereto on the basis of his title-retention contract given to him by Wallace Motor Co. on the day above stated. . . 14. Dr. Stephen Gernazian in purchasing said automobile from Wallace Motor Co., paid therefor the sum of $865. The price of said automobile had it been sold new from the storeroom of Wallace Motor Co. would have been $1025."

This case is controlled by the ruling in *National City Bank* v. *Adams,* 30 *Ga. App.* 219 (117 S. E. 285), which is, in effect, that where one takes a bill of sale to secure debt, which is duly recorded, conveying an automobile, he can not enforce it against a bona fide purchaser from the maker of the bill of sale where the loan on the property was made to one who the lender knew would offer the property for sale in the due course of business, as dealer or merchant, by virtue of an express or clearly-implied authority from the grantee or lender to sell the property in the borrower's regular course of business; and that the legal effect and import of such a loan and agreement is to constitute the borrower the agent of the lender to sell the property and hold the proceeds to the amount of the encumbrance for the lender's benefit and account to him for it; that it is not the duty of one purchasing such property from the borrower as dealer to follow the proceeds of the sale and see that the encumbrance is paid; and that the lender's sole recourse is against the borrower as his duly-constituted agent; provided the purchaser is not a party to a fraudulent disposition of the proceeds of the sale.

It is urged by the defendant in error that the facts in the *Adams* case distinguish it from the instant one. It is our opinion that the statement of fact in this case that the automobile was to be sold in the borrower's regular course of business makes it even a stronger case for the principle established than the *Adams* case. In the

692

*Adams* case there was no more than a "clearly implied" authority to sell in the regular course of business. The facts in the *Adams* case, added together, simply showed that the bank knew that the automobiles would be sold in the regular course of business. The reason for the rule is that when the public purchases from a dealer and merchant it assumes that they have title to the property offered for sale and have a right to sell it, and it is not the custom for it to go to the public records to check the title to goods or property purchased from them, as it would do, or be presumed to know it ought to do, when buying from one not a dealer or merchant, or not in the regular course of business, and the lender is charged with the knowledge of such custom. The following cases are in accord with the ruling in the *Adams* case (though there are cases to the contrary, some of which are based on statute) : Boice *v.* Finance & Guaranty Corp., 127 Va. 563 (102 S. E. 591) ; Helms *v.* American Security Co., 216 Ind. 1 (22 N. E. 2d, 822) ; Rogers County Bank *v.* Cullison, 186 Okla. 373 (98 Pac. 2d, 612) ; Ashcraft *v.* Butts, 185 Okla. 587 (95 Pac. 2d, 107) ; Employers' Casualty Co. *v.* Helm (Tex. Civ. App.), 295 S. W. 955; Coffman *v.* Citizens Loan & Investment Co., 172 Ark. 889 (290 S. W. 961) ; Utica Trust & Deposit Co. *v.* Decker, 244 N. Y. 340 (155 N. E. 665) ; Simmons *v.* State, 160 Miss. 582 (135 So. 196) ; Martin *v.* Duncan Automobile Co., 50 Nev. 91 (252 Pac. 322). See also 97 A. L. R. 65. The facts in this case show that the purchaser knew at the time of his purchase that he was buying from a dealer, so the fact that he bought the automobile in Atlanta rather than Millen could make no difference, and there was no evidence of any circumstance indicative of fraud on the part of the purchaser. The court erred in finding in favor of the plaintiff and in overruling the motion for new trial.

*Judgment reversed. Stephens, P. J., concurs. Sutton, J., concurs specially.*