DAAS *v.* CONTRACT PURCHASE CORPORATION.

SCOTT *v.* SAME.

1. CHATTEL MORTGAGES—FILING—NOTICE.
    Generally the proper filing of a chattel mortgage is notice to all the world precluding the existence of bona fide purchasers for value without notice (3 Comp. Laws 1929, § 13424).

2. SAME—AUTOMOBILES—FLOOR PLAN MORTGAGE—ACTUAL NOTICE TO PURCHASERS.
    Chattel mortgagee of automobiles who left the cars with floor plan mortgagor-owner for resale and which latter person sold

them to plaintiffs without actual knowledge of properly-filed mortgage and who received clear certificate of title from dealer was not entitled to enforce lien of mortgage against such purchasers for purpose of collecting on default of dealer, where it appears mortgagee had received many times amount allocated in mortgage to cars purchased by plaintiffs, made frequent checks on cars in dealer's possession and failed to release liens because of some mix-up in financial affairs between itself and dealer and dispossessed plaintiffs some three months after their purchases and after they had obtained titles from secretary of State without showing liens of chattel mortgages (3 Comp. Laws 1929, § 13424).

3. COSTS—BRIEFS—CONSOLIDATED CASES.
    Where two equity cases are consolidated for hearing and decrees therein entered for plaintiffs were affirmed on a defendant's appeal, costs are awarded to the plaintiff who filed a brief but not to other who filed no brief.

Appeal from Wayne; Webster (Arthur), J.   Submitted April 15, 1947.   (Docket Nos. 31, 32, Calendar Nos. 43,647, 43,648.)   Decided June 27, 1947.

Separate bills by Blanche Daas and Cicero Scott against Contract Purchase Corporation, a Michigan corporation, and another for mandatory injunction compelling return of an automobile.   Cases tried together.   Decrees for plaintiffs.   Defendant Contract Purchase Corporation appeals.   Affirmed.

*Lester L. Johnson,* for plaintiff Daas.

*Fred Dye* and *Norman P. Burau,* for defendant Contract Purchase Corporation.

BOYLES, J.   These consolidated appeals involve the question whether, under the circumstances here, a "floor plan" chattel mortgage given by an automobile dealer to a finance company covering automobiles in the dealer's stock for sale, is a valid lien

as against subsequent purchasers of such automobiles, without actual notice or knowledge of such lien. These two plaintiffs purchased automobiles from the defendant Dave Collier, an automobile dealer, which were covered by properly filed floor plan chattel mortgages which he had executed to the defendant Contract Purchase Corporation. Subsequently, and while plaintiffs were not in default in paying for their purchases, the finance company, claiming default in payments due it from the mortgagor-dealer, seized possession of the automobiles. Thereupon plaintiffs filed separate bills of complaint in chancery to enjoin the defendant finance company from disposing of said automobiles, to compel their return, and for damages for loss of use during the detention. The defendant Contract Purchase Corporation answered and contested, the cases were consolidated for hearing, and decrees were entered directing said defendant to return the automobiles or in case of failure thereof to pay plaintiffs the values of the automobiles as found by the court. The decrees also ordered said defendant to pay plaintiffs certain damages for loss of use of the automobiles. The record does not indicate what disposition was made of the cases as to defendant Collier. The defendant Contract Purchase Corporation appeals.

There is no dispute as to the essential facts. On November 30, 1945, defendant Dave Collier sold a used 1942 Pontiac sedan to the plaintiff Blanche Daas. Plaintiff Daas was allowed $772.84 for a used 1940 Oldsmobile coupe which she traded in, and she gave Collier an instalment contract for the balance of the purchase price. The existing certificate of title of the Pontiac sedan, which was in Collier's possession, showed that it had been assigned to him, free from lien, by one Davis, the

former owner, on November 23, 1945. Collier, as a registered dealer, reassigned the title to plaintiff Daas on December 1, 1945, without showing the floor plan mortgage lien. The reassignment of the certificate of title not disclosing that there was such a lien, the secretary of State issued a certificate of title to plaintiff Daas for said automobile, showing that it was free and clear of lien in so far as said floor plan mortgage was concerned.

On December 14, 1945, the plaintiff Cicero Scott purchased a 1941 Cadillac four-door sedan from Collier for $2,078.48, trading in a Buick for $800, the balance now being financed through another company. Subsequent transactions relating to the assignment of the existing certificate of title by Collier do not appear in the record but, as admitted by appellant, followed the same course as in the case of plaintiff Daas.

At the time these sales were made by Collier these automobiles were subject to the prior floor plan mortgages referred to herein. The Daas automobile was mortgaged by Collier to the Contract Purchase Corporation on November 23, 1945, together with four other automobiles, to secure a demand promissory note given by him for $4,780, of which loan $1,155 was prorated to the Pontiac (Daas) car. The Scott automobile was mortgaged by Collier to Contract Purchase Corporation on November 17, 1945, together with two other automobiles, to secure payment of a note given by Collier the same date for $3,385, of which $1,530 was prorated to the Cadillac (the Scott car). These floor plan mortgages were filed with the register of deeds for Wayne county November 21 and November 26, 1945, respectively. Both were on file at the time plaintiffs made their respective purchases from Collier.

Unfortunately, Collier did not pay off the floor plan mortgages on these two automobiles and get releases from the finance company. The secretary of Contract Purchase Corporation testified:

"In the course of custom and usage, the dealer is supposed to pay the indebtedness, or amount due on any particular automobile at the time it is sold, or as a simultaneous transaction with the sale. We do not tolerate any lapses or delays between the sale and the payment of the loan. When we learn of such delays, we either call the dealer to the office, or go out to see him, to show him where he is in default, and demand immediate payment for any shortages that may exist at that time. If any payment is made we put him on notice that such practice cannot continue. We contemplate that those cars will be sold by Mr. Collier, to whoever comes in there to purchase an automobile. I guess we don't expect him to tell that person that he owes us $1,155 on the Pontiac. Apparently he has the control of that car to all intents and purposes when the person comes in, and we expect him to sell the car, and immediately pay us. We don't expect him to call the attention of the purchaser to the fact that he owes us money. * * * If he sells it, and allows it to be removed from his premises, coupled with nonpayment to us at the same time, it constitutes a default. The only notice we give the customer is through the recording of the mortgage. We never had the property or the title to hand over. We knew he had the title to the property, and the title is the way in which he would transfer this property to the customer. If he did hand it over to the purchaser, without paying the mortgage, we would have a right to foreclose on the mortgage. That is the way this business is conducted all the way around the city of Detroit, for years and years. Some of the finance companies hold the title, so that when the transfer is made, they actually know about it. They are in

a minority, and don't do it in every instance. They may hold the title if they feel the account is worth working with, but they don't have a complete feeling of trust toward that account, but not as a general practice. We are dealing with this dealer, and are likewise trying to get him in a position where he can do business in the ordinary flow of business in the used car line. If he had to disclose to the customer that we had a mortgage on a particular car which he represented to be free and clear, it might create some sales resistance. I don't know that that is the reason we do business in this way. It follows logically.

"Contract Purchase Corporation relies only on the filing laws to protect its security. An unscrupulous dealer can lead the customer astray, when we leave the title in the hands of the dealer, and allow him to go ahead and sell."

The Contract Purchase Corporation had a checkup system whereby it checked the dealers approximately every 10 days, sometimes once a week. This checkup system consisted of having an inspector go to the sales lot of Collier and physically check the cars on which there were outstanding mortgages. When the checkup system followed by Contract Purchase Corporation disclosed, in December, 1945, that the two automobiles here involved were missing from Collier's lot, efforts were made to trace them. It was not until the latter part of February, 1946, that it was definitely learned by appellant that the cars had been sold by Collier. On February 18, 1946, Collier had given a check to Contract Purchase Corporation for $9,015 specifying that a part of it was to be applied to release the floor plan lien on the Cadillac, but the check was dishonored and never collected.

The record indicates that there was some misunderstanding or mix-up between Collier and the

company as to the crediting of payments. It was the understanding of Collier when he sent checks in to the Contract Purchase Corporation that in line of sale the first car sold was the first one that the money was to apply on. Over $100,000 was paid by Collier to the Contract Purchase Corporation after November 30, 1945, the date on which the car was sold to Daas, and during the ensuing two and one-half months. Collier's average outstanding debt to the company was between $50,000 and $60,000. The total amount of the two floor plan mortgages on eight automobiles, which included the two here in question, was $8,165. Plaintiffs' two automobiles were mortgaged for $2,685. The record does not satisfactorily explain why the floor plan mortgage liens were not released on these two automobiles, out of the $100,000 subsequently paid to appellant by the dealer.

Whatever may have been the merits of the controversy between Collier and the company, the fact remains that the mortgagee did not release the two automobiles in question from its claimed liens. Early in March, 1946, the company took the two automobiles away from plaintiffs, and presumably still has them, due to restraining orders issued by the circuit judge in March, 1946, when the bills of complaint were filed.

The appellant Contract Purchase Corporation claims that the filing of the chattel mortgages in the register of deeds' office is constructive notice to the world and to the public, and that it has the right to enforce its liens because the mortgages were so filed. The precise question here is whether the appellant finance company, mortgagee under properly filed floor plan mortgages covering automobiles left in possession of the dealer-mortgagor, to be placed in stock by him and sold to the dealer's

customers in the usual course of business, allowing the dealer to transfer certificates of title without disclosing the liens, leaving it to the dealer to thereafter pay the mortgages and obtain releases from the liens after the sale and transfer of title, can thereafter claim the automobiles from purchasers who had received a clear transfer of title from the dealer, without any actual notice or knowledge of the liens. In the case at bar, there is the further circumstance that the appellant made frequent periodical checks on the automobiles in the dealer's possession, received payments amounting to about $100,000 from the dealer during the two and one-half months following the sales to plaintiffs but failed to release plaintiffs' automobiles from the liens because of some mix-up in the financial affairs between the dealer and the appellant-mortgagee. There is the further circumstance that appellant dispossessed plaintiffs of the automobiles some three months after the purchase, when plaintiffs had obtained certificates of title from the secretary of State without showing the liens.

In so far as it bears on the issue before us, the statute on which appellant relies provides that every chattel mortgage which is not accompanied by an immediate delivery followed by actual and continued change of possession of the things mortgaged shall be void as against subsequent purchasers in good faith of the things mortgaged, unless filed in the office of the register of deeds. 3 Comp. Laws 1929, § 13424 (Stat. Ann. § 26.929).

Appellant claims that our decisions have settled the question in this State, and that there is no occasion to resort to authority from other jurisdictions. However, the instant cases involve the rights of *purchasers* who have purchased automobiles from the dealer-owner, where the mortgagee under a floor

plan chattel mortgage given by the dealer-owner covering automobiles leaves them in the possession of the mortgagor-owner for sale in the regular course of business, with the power to sell and to transfer title without indicating, any lien, subsequent to which sale the mortgagor is supposed to make a payment to the mortgagee and thereby secure a release of the automobiles from the liens. The decisions of this Court on which appellant relies have not heretofore settled this question.

In *National Bond & Investment Co.* v. *Union Investment Co.,* 260 Mich. 307, the Court held that where a dealer sold, on a conditional sales contract, an automobile which was covered by a floor plan mortgage, and then assigned the conditional sales contract, the *assignee* took subject to the rights of the mortgagee under the floor plan mortgage. Mr. Justice WIEST, writing for the Court in that case, expressly refrained from expressing any opinion on the precise question here before us, as follows (p. 308):

"Defendant reviews by appeal, presenting the issue of right of priority between the two finance corporations. Rights of the purchaser of the car from the dealer are not here in issue or presented."

The precise question here for decision was again left unanswered by Mr. Justice BUTZEL, writing for the Court in *People* v. *Etzler,* 292 Mich. 489, as follows (p. 492):

"It is claimed that the trial court erred in not permitting defendant to show that it was the practice of the finance company to permit the sale of the cars covered by the floor plan mortgage before the dealer secured a release or discharge, and that if such practice were proved, the finance company must be held to have waived its lien in favor of the

purchaser who had no actual knowledge of the recorded incumbrance.    The exact point in controversy has not yet been before this Court, although we have protected a mortgagee of automobiles, as against the mortgagor's assignee, where there was proper recording (*National Bond & Investment Co. v. Union Investment Co.*, 260 Mich. 307), and have declined protection for failure to record (*Becker v. La Core*, 211 Mich. 684; *Motor Bankers Corp. v. C. I. T. Corp.*, 258 Mich. 301).    Decisions in other jurisdictions are far from unanimous. * * * Because we hold that the so-called chattel mortgage failed at its inception to create an incumbrance, we decline to discuss further the question raised.''

"In considering the statute law, consideration must be given to a significant change made in 1935.    When the *National Bond & Investment Company* decision was handed down in 1932, the statute law (3 Comp. Laws 1929, § 13424), contained the following:

"*Provided further,* That when such mortgage or other conveyance intended to operate as a mortgage is given upon a stock of merchandise or merchandise and fixtures or any part thereof purchased for resale at retail then such instrument or a true copy thereof, and of the affidavit thereto attached shall also be filed in the office of the register of deeds of the county where the goods and chattels are located.''

This provision was retained in Act No. 18, Pub. Acts 1934 (1st Ex. Sess.), effective March 28, 1934.* However, it was eliminated by Act No. 129, Pub. Acts 1935,* and has not since appeared in the statute law.    See Comp. Laws Supp. 1940, § 13424, Stat. Ann. § 26.929.    Nor does the dissimilar statute (2 Comp. Laws 1929, § 9550 [Stat. Ann. § 19.381]), referred to by appellant, which applies to the filing

---

* Amending 3 Comp. Laws 1929, § 13424.—Reporter.

of title-retaining conditional contracts for the purchase and sale of personal property, have any decisive effect on the question before us. The distinction between the two statutes is pointed out in *Mills Novelty Co.* v. *Morett,* 266 Mich. 451.

Appellant cites and relies on decisions of this Court holding that one can not be a bona fide purchaser in good faith *and without notice,* of personal property covered by a chattel mortgage properly filed. Such a case is *Pinconning State Bank* v. *Henry,* 258 Mich. 44. The case of *Saginaw Financing Corp.* v. *Detroit Lubricator Co.,* 256 Mich. 441, cited by appellant, does not involve a floor plan mortgage, or the transfer of a certificate of title, and is distinguishable from the instant case on the facts. We believe that the precise question now before us can not be answered, as insisted by appellant, by a statement that the filing of the chattel mortgages was notice and that therefore plaintiffs could not be bona fide purchasers for value *without notice.* It may be assumed that such is a correct statement of the general principle of law. It has been so held in *Saginaw Financing Corp.* v. *Detroit Lubricator Co., supra; Pinconning State Bank* v. *Henry, supra; Motor Bankers Corp.* v. *C. I. T. Corp.,* 258 Mich. 301; *National Bond & Investment Co.* v. *Union Investment Co., supra; People* v. *Etzler, supra; Stamler* v. *Universal Ins. Co.,* 305 Mich. 131. But beyond the general statement of law, we have the question here, not yet settled by this Court, whether the doctrine of invalidity of the floor plan mortgage as applied to these plaintiffs under the circumstances of this case, or of waiver or estoppel of the appellant to assert its floor plan liens as against the plaintiffs herein, operates to free the two automobiles here involved from appellant's claim of liens. The question goes beyond the mere

issue whether the *plaintiffs* are bona fide purchasers without notice. Has the appellant finance company, by the course of its transactions with the dealer, and by its methods of business, placed itself in such a position that the Court must consider it has waived any right to hold the automobiles sold to these plaintiffs for any balance due it from the dealer. The record is convincing that by these transactions and the method of doing business between the finance company and the dealer, appellant has put it in the power of the dealer to mislead the purchasers, and to perpetrate a fraud.

While appellant insists upon relying on the decisions in this State, which as we have said do not answer the question here, appellant admits that some decisions from other States seem to be to the contrary. Counsel for appellant, in their brief, say:

"It is plain from reading Judge Webster's opinion that he fell under the spell of the line of authority which holds that one who lends money on the security of a lien upon personal property held by a dealer for resale, cannot enforce the lien as against a purchaser from the dealer without actual knowledge of the lien. This is the same question that was reserved by this Court, in deciding the case of *National Bond & Investment Co.* v. *Union Investment Co., supra.* That this line of authority is both voluminous and respectable, can not be gainsaid. Notes in 73 A. L. R. 236, 97 A. L. R. 646, and 136 A. L. R. 821 collect and review literally hundreds of cases on the subject, the first under the title 'Validity of chattel mortgage where mortgagor is given right to sell,' the second under 'Chattel mortgagee's consent to sale of mortgaged property as waiver of lien' and the third under 'Record of chattel mortgage on, or conditional sale of, automobile or other chattel left in hands of dealer, as constructive notice.' "

In disposing of the question Judge Arthur Webster in his opinion made the following observation:

"As between a mortgagee who suffers a loss because of the dishonesty of a dealer, and a purchaser who is asked to suffer the same loss, I believe that of the two who suffered he who placed it in the power of the dealer to work the fraud must be held to be responsible for it, and that the purchaser who had nothing to do with this situation should not be held responsible for it."

Many authorities were cited by Mr. Justice Butzel in *People v. Etzler, supra,* where the question has been considered. Admittedly the decisions in other jurisdictions, and authorities who have written on the subject, are not in entire agreement. Under the circumstances of the two cases now before us we adhere to the conclusion that appellant did not have the right to enforce its liens as to plaintiffs, for the purpose of collecting on the default of defendant Collier under the floor plan mortgages. The weight of authority plainly is to that effect. In support of this conclusion are the following decisions from other jurisdictions expressly relating to liens on, and sales of, automobiles: *Bernhagen v. Marathon Finance Corp.,* 212 Wis. 495 (250 N. W. 410); *Boice v. Finance & Guaranty Corp.,* 127 Va. 563 (102 S. E. 591, 10 A. L. R. 654); *Denno v. Standard Acceptance Corp.,* 277 Mass. 251 (178 N. E. 513); *Coffman v. Citizens' Loan & Investment Co.,* 172 Ark. 889 (290 S. W. 961); *Kearby v. Western States Securities Co.,* 31 Ariz. 104 (250 Pac. 766); *Moore v. Ellison,* 82 Col. 478 (261 Pac. 461); *Gramm-Bernstein Motor Truck Co. v. Todd,* 121 Wash. 145 (209 Pac. 3); *Indiana Investment & Securities Co. v. Whisman,* 85 Ind. App. 109 (138 N. E. 512); *Helms v. American Security Co. of Indiana,* 216 Ind. 1 (22 N. E. [2d] 822); *National City*

*Bank of Rome, Ga.,* v. *Adams,* 30 Ga. App. 219 (117
S. E. 285); *Luther* v. *Lee,* 62 Mont. 174 (204 Pac.
365); *Martin* v. *Duncan Automobile Co.,* 50 Nev. 91
(252 Pac. 322); *Jones* v. *Commercial Investment
Trust,* 64 Utah, 151 (228 Pac. 896); *Howell* v. *Board,*
185 Okla. 513 (94 Pac. [2d] 830); *Fogle* v. *General
Credit, Inc.,* 74 D. C. App. 208 (122 Fed. [2d] 45, 136
A. L. R. 814); *Winakur* v. *Sapourn,* 156 Md. 662 (145
Atl. 342); *Hostetler* v. *National Acceptance Co.,* 36
Ohio App. 141 (172 N. E. 851); *Atlantic Discount
Corp.* v. *Young,* 224 N. C. 89 (29 S. E. [2d] 29).

See, also, 42 Harvard Law Review, p. 573 (February, 1929); 80 University of Pennsylvania Law
Review, p. 755 (March, 1932); 2 Rocky Mountain
Law Review, p. 261 (June, 1930); 97 A. L. R. p. 646
(Chattel mortgagee's consent to sale of mortgaged
property as waiver of lien); 136 A. L. R. p. 821 (Record of chattel mortgage on, or conditional sale of,
automobile or other chattel put or left in hands of
dealer, as constructive notice).

If we should uphold the contention of the appellant here, under the circumstances of these appeals,
any purchaser of an automobile from a dealer in
the regular course of the dealer's business would
have to first ascertain the engine and serial numbers
of the automobile and then check the same with the
files and records in the office of the register of deeds,
for possible liens, or otherwise purchase at his own
risk.    Furthermore, if we should hold that appellant's liens are good as against plaintiffs' titles,
the situation here would be further complicated by
the fact that both plaintiffs transferred the titles of
automobiles to the dealer as down payments on their
purchases, which titles may have been, or can be,
transferred to others by the dealer.    Further complication would result from the fact that the plaintiffs executed instruments for instalment payments

on their purchases, for the balance of their purchase price, with liens on the automobiles to secure payment thereof, which are now in the hands of other holders.    Pertinent here is what was said in *Re Petition for Dissolution of Willys-Detroit, Inc.*, 287 Mich. 689, as follows (pp. 696, 697):

"We cannot more clearly express our attitude toward transactions of this nature than by quoting with approval the following from *Root v. Republic Acceptance Corp.*, 279 Pa. 55 (123 Atl. 650):

" 'The complicated dealings between many of those trafficking in, and loaning money on, automobiles have reached a point where the courts must strip transactions of their pretenses and look at them as they really are, with the camouflage of papers giving a similitude of the passing of title removed, or they will be dealing with fictions instead of facts.    Those who buy and sell, bail and loan money on motor vehicles must be given to understand that the realities of their transactions will be sought for by the courts; they will look through the screen of paper titles to ascertain what was the real situation.' "

The decrees are affirmed, with costs to appellee Blanche Daas, but without costs to appellee Scott who has not filed a brief in this Court.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, REID, NORTH, and DETHMERS, JJ., concurred.