# Richmond

## General Credit, Inc. v. Winchester, Inc., E. M. Baker and R. J. Bermudez.

January 17, 1955.

Record No. 4256.

Present, All the Justices.

The opinion states the case.

*Ball & McCarthy* and *Frank L. Ball, Jr.*, for the plaintiff in error.

*Bendheim, Fagelson, Bragg & Giammittorio,* for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

The principal question presented on this appeal is whether a properly recorded lien on an automobile given by a dealer to a finance company which left the car in the dealer's possession knowing that it would be offered for sale in the regular course of business, is valid as against a purchaser for value without actual knowledge of the lien. From a judgment holding that such lien is not valid as against the purchaser the finance company has appealed. The facts are not disputed and are as follows:

For a number of years Winchester, Inc., has been an authorized Packard automobile dealer with its place of business at 1810 King street, in the city of Alexandria, where it had its showrooms and general repair shop. It also bought and sold used cars. Since 1948 General Credit, Inc., has assisted Winchester in financing the purchase of new cars by advancing the purchase price to the Packard Motor Car Company and taking liens on such cars to secure the sums so advanced. Beginning in October, 1952, after such cars had come into the possession of Winchester, that concern would apply to and receive from the Division of Motor Vehicles a dealer's certificate of title for each car, under Code, § 46-106, issued in the name of Winchester, showing thereon a lien in favor of General Credit for the amount of the purchase price so advanced by it. The certificate of title was held by General Credit until its lien was paid off.

With the permission of General Credit, Winchester placed such cars on display in its showrooms for sale to the public.

General Credit relied upon Winchester, upon the sale of such a car, to collect the purchase price and pay off the recorded lien held by General Credit. Periodically, once or twice a week, General Credit would check with Winchester the number of cars on which General Credit had liens and which had been sold by Winchester to its customers, and require Winchester to pay off the total of such liens. Upon the discharge of the liens certificates of title to such cars would be transferred to the names of the respective purchasers. Thus, General Credit not only knew that the cars on which it had recorded liens were offered for sale by Winchester from its stock of cars, but knew also that such cars were actually being sold by Winchester to its customers before the liens thereon had been paid off. General Credit not only failed to protest against, but acquiesced in, this method in which Winchester was selling these cars.

On May 7, 1953, in accordance with this related method of doing business, General Credit advanced to Packard Motor Car Company, for the account of Winchester, the sum of $2,499.26 on account of the purchase price of a 1953 Packard sedan car, engine number L 314039. On May 22 the Division of Motor Vehicles issued a dealer's title certificate for this car, showing it to be owned by Winchester with a lien thereon of $2,499.26 in favor of General Credit. As was customary, the certificate of title was delivered to and held by General Credit. In the meantime Winchester had taken possession of the car and exhibited it for sale in its showrooms.

On May 23, E. M. Baker and R. J. Bermudez purchased this car from Winchester for the sum of $3,225.50, of which $2,300 was paid in cash and the balance represented by a trade-in allowance on the purchasers' 1948 Packard car. The purchasers received a receipted invoice showing the details of the transaction. They were not told that the title to the car was in the name of Winchester subject to the recorded lien thereon in favor of General Credit, nor

did they have actual knowledge of this. The purchasers were told that in a few days they would receive from the Division of Motor Vehicles a certificate of title for the car and that in the meantime the receipted invoice would serve as evidence of their title. The state license plates which the purchasers had carried on their 1948 car were transferred to the new car and they signed the necessary application for the registration of the new car in their names.

Winchester failed to pay off and discharge the recorded lien held by General Credit on this car. On June 1st or 2nd, as the result of a routine periodical check, General Credit learned that this car had been sold to Baker and Bermudez, and shortly thereafter took possession of it. Then followed the present litigation to determine the rights of the parties.

We agree with the trial court that under the principles laid down in *Boice* v. *Finance & Guaranty Corp.*, 127 Va. 563, 102 S. E. 591, 10 A. L. R. 654, the lien of General Credit was null and void as against the rights of Baker and Bermudez who were purchasers for value and without actual notice of the existing lien.

In the *Boice* case, decided in 1920, this court held that a duly recorded chattel mortgage, executed and delivered by an automobile dealer on an automobile forming a part of his stock of cars and left with the dealer for sale with the knowledge and consent of the lien holder, was null and void as against a purchaser for value without actual notice of the existence of the lien.

The opinion in that case, written by Judge Burks, points out that since *Lang* v. *Lee*, 3 Rand. (24 Va.) 410, decided in 1825, it has been uniformly held by this court that a mortgage on a stock of goods, wares and merchandise is "null and void as against creditors and purchasers of the grantor" (127 Va., at page 569), and that an automobile in the hands of a dealer for sale is a part of his stock of merchandise. (127 Va., at page 569). The opinion further points out that the reason for the rule is that to uphold a

lien on articles of merchandise left in the hands of a dealer for sale would be a fraud upon purchasers (127 Va., at page 569), and that the lien holder is estopped to assert his lien against an innocent purchaser, because "where one of two equally innocent persons must suffer, he should bear the burden whose conduct has induced the loss." 127 Va., at pages 570, 571.

The principles laid down in the *Boice* case have been adhered to by this court in *Garrett* v. *Rahily & Martin*, 132 Va. 226, 111 S. E. 110 (1922); *Gump Investment Co.* v. *Jackson*, 142 Va. 190, 128 S. E. 506, 47 A. L. R. 82 (1925); *O'Connor* v. *Smith*, 188 Va. 214, 219, 49 S. E. (2d) 310, 312 (1948).

The *Boice* case is a leading case and has been followed by the great majority of the courts which have dealt with the subject. See Anno: 136 A. L. R. 830 *ff*; 14 C. J. S., Chattel Mortgages, § 203, pp. 807, 808; 10 Am. Jur., Chattel Mortgages, § 118, p. 792, 1954 Pocket Supp., p. 95.

Among the recent cases taking this view are *Fogle* v. *General Credit, Inc.*, 74 App. D. C. 208, 122 F. (2d) 45, 136 A. L. R. 814 (1941), in which the opinion was written by Justice Rutledge, later a member of the Supreme Court of the United States; *Gernazian* v. *Harrison*, 66 Ga. App. 689, 19 S. E. (2d) 165 (1942); *Daas* v. *Contract Purchase Corp.*, 318 Mich. 348, 28 N. W. (2d) 226 (1947); *General Contract Purchase Corp.* v. *Clem*, 220 Ark. 863, 251 S. W. (2d) 112 (1952).

For cases taking the opposite view see Anno: 136 A. L. R. 824 *ff*.

It is interesting to note that several of the courts which have not fully adopted the broad principles laid down in the *Boice* case hold that where, as in the present case, the mortgagee allows the mortgagor to have possession of automobiles, which in the contemplation of the parties are to be disposed of by the mortgagor in the ordinary course of trade, such mortgagor is the agent of the mortgagee to the extent that the mortgagor may pass title to goods sold in the usual

way to a buyer free of a duly recorded mortgage lien. In other words, by such course of dealing the mortgagee is estopped to assert his lien. See *Atlantic Discount Corp.* v. *Young,* 224 N. C. 89, 29 S. E. (2d) 29, 30 (1944); *Handy* v. *C. I. T. Corp.,* 291 Mass. 157, 197 N. E. 64, 101 A. L. R. 447 (1935); *Western States Acceptance Corp.* v. *Bank of Italy,* 104 Cal. App. 19, 285 P. 340 (1930); *Universal Credit Co.* v. *Reily,* 171 Okla. 286, 42 P. (2d) 516 (1935).

But it is argued that the principles laid down in the *Boice* case, in so far as they relate to the sale of and liens on motor vehicles, have been nullified by the statutes now in effect providing for the registration and licensing of such vehicles, and enacted since that decision. We do not agree with that view.

The provisions in our law for the registration and licensing of motor vehicles and the issuance of certificates of title thereto, and the recordation of liens thereon, are found in the Code of 1950, § 46-42 *ff.* These provisions came into our statute law by the Act of 1926, ch. 149, p. 258, which was amended and amplified by the Act of 1932, ch. 342, p. 613, and subsequent acts which need not here be detailed. Under section 46-42, with certain exceptions which are not here pertinent, every owner of a motor vehicle intended to be operated upon any highway in this State shall obtain from the Division of Motor Vehicles "a certificate of title therefor." Section 46-68 provides for the issuance of a certificate of title to an owner other than a manufacturer or dealer. Section 46-106 provides for the issuance of a certificate of title to a manufacturer or dealer. Section 46-84 requires that an owner of a motor vehicle, upon transferring his title thereto, "shall endorse an assignment and warranty of title upon the reverse side of the certificate of title" to the purchaser, "with a statement of all liens or encumbrances thereon." Upon the receipt of a certificate of title properly assigned and acknowledged, accompanied by an application for registration in the name of the purchaser, the Division is required to issue to the purchaser a new certificate or indicium of title. (Code, § 46-87). Under the provisions

of sections 46-69 and 46-70 all liens or encumbrances placed on a motor vehicle must be shown on the certificate of title.

Section 46-71, which is the provision mainly relied on by General Credit, reads thus: *"Certificate as notice of lien.—* Such certificate of title, when issued by the Division showing a lien or encumbrances, shall be deemed adequate notice to the Commonwealth, creditors and purchasers that a lien against the motor vehicle exists and the recording of such reservation of title, lien or encumbrance in the county or city wherein the purchaser or debtor resides or elsewhere is not necessary and shall not be required. Motor vehicles, trailers, or semi-trailers registered or for which a certificate of title shall have been issued under this title shall not be subjected to, but shall be exempt from, the provisions of §§ 55-88 to 55-90 and 55-152, nor shall recordation of such lien in any other place for any other purpose be required or have any effect."

These statutes were designed to supersede the former provisions for recording a bill of sale for an automobile or a chattel mortgage thereon in the local clerk's office by requiring that such documents be registered with a central state agency, namely, the Division of Motor Vehicles. Prior to the enactment of these statutes a chattel mortgage on an automobile was required to be recorded in the clerk's office of the county or corporation wherein the car was located. (Code, §§ 55-96, 55-97.) Upon the removal of the car the lien was required to be recorded in the clerk's office of the county or corporation to which it was removed. (Code, § 55-98.) The present statutes afford a simple method of recording such lien on the title certificate of the vehicle through a central agency, the Division of Motor Vehicles, instead of requiring the recordation in the local clerk's office or offices where the vehicle may be located.

As we pointed out in *Maryland Credit Finance Corp.* v. *Franklin Credit Finance Corp.*, 164 Va. 579, 583, 180 S. E. 408, 409, 410, "It was the intention of the Legislature to provide for a simple means for the ascertainment of liens against motor vehicles. Instead of requiring a creditor or

purchaser to look for liens against motor vehicles in many places, perhaps, the fact that such liens exist can be established by looking in the one place designated by the statute."

Section 46-71, *supra*, provides that the certificate of title issued by the Division showing a lien or encumbrance "shall be deemed adequate notice to the Commonwealth, creditors and purchasers that a lien against the motor vehicle exists and the recording of such * * * lien or encumbrance in the county or city wherein the purchaser or debtor resides or elsewhere is not necessary and shall not be required." That is to say, without recordation elsewhere, the notation of a lien on a certificate of title is "adequate" constructive notice thereof to creditors and purchasers, just as the recordation in the local clerk's office of a chattel mortgage on any other personal property is "adequate" constructive notice thereof to creditors and purchasers. See *C. I. T. Corp.* v. *Guy*, 170 Va. 16, 25, 195 S. E. 659, 662.

There is no suggestion in section 46-71, or elsewhere in the statutes, that they were intended to validate a lien on a dealer's stock of cars, as against an innocent purchaser, or otherwise nullify the principles laid down in the *Boice* case. The decision in that case did not turn upon the adequacy or inadequacy of constructive notice resulting from the recordation of the chattel mortgage on the car. It was based upon the principle of equitable estoppel despite the adequacy of the constructive notice to purchasers resulting from a proper recordation of the lien. The present case turns upon the same principles.

Many of the States have similar statutes providing for the issuance of certificates of title for motor vehicles by a central state agency and the recordation of liens thereon. We have been pointed to no case, nor have we been able to find any, which holds or even suggests that these modern registration statutes were intended to abrogate the principles upon which the decision in the *Boice* case was based. The courts which do not follow the principles announced in that case ground their holding upon the simple principle that

the recordation of a chattel mortgage in the manner required by law gives a purchaser constructive notice of the lien, and that if he buys an automobile without ascertaining the existence of such lien by an examination of the records he must bear the loss. That view was clearly and definitely rejected by this court in the *Boice* case. 127 Va., page 570.

To uphold the contention of General Credit in this case would have this result: An innocent purchaser who buys from a dealer's stock of merchandise a refrigerator covered by a duly recorded chattel mortgage would, under the principles of the *Boice* case, get good title thereto free of the lien. If the same purchaser buys from the same dealer's stock of merchandise a motorcycle covered by a chattel mortgage noted on the certificate of title, he would *not* get good title thereto free of the lien. We do not think it was the purpose and effect of the motor vehicle registration statutes to accomplish any such incongruous and inequitable result.

For these reasons we are of opinion that the judgment appealed from should be affirmed, and it is so ordered.

*Affirmed.*

BUCHANAN, MILLER and SMITH, JJ., dissenting.

MILLER, J., dissenting.

In 1926 the General Assembly of Virginia enacted broad, comprehensive and mandatory legislation (Acts 1926, ch. 149), having to do with the registration of titles to motor vehicles. It provided for the issuance of certificates of title to motor vehicles, the recordation of liens upon such vehicles, and declared the effect of the issuance and recordations of such titles and liens. Its enactment was subsequent to the cases of *Boice* v. *Finance and Guaranty Corp.*, 127 Va. 563, 102 S. E. 591, 10 A. L. R. 654; *Garrett* v. *Rahily & Martin*, 132 Va. 226, 111 S. E. 110; and *Gump Investment Co.* v. *Jackson*, 142 Va. 190, 128 S. E. 506, 47 A. L. R. 82, Vir-

ginia decisions cited and relied upon in the majority opinion.[1]

The act of 1926 was amended and amplified by Acts 1932, ch. 342, p. 613, and Acts 1934, ch. 265, p. 380. These enactments, as amended, are now carried in the Code of 1950 under "Title 46, Motor Vehicles" and the parts pertinent to this decision are found within chapter 3, articles 1 to 5, §§ 46-42 to 46-109,[2] inclusive.

Section 46-106 provides for issuance of certificates of title to manufacturers or dealers. It requires the manufacturer or dealer to obtain certificates of title for cars that are to be operated, and *it expressly allows* issuance of such certificates for new cars that are to be sold as such. If the "application for a certificate of title" discloses that there is a lien upon the vehicle, § 46-69 requires the Division of Motor Vehicles to list the lien upon the title certificate.

Section 46-71, Code of 1950, declares that an issued certificate of title showing a lien or encumbrance thereon shall be deemed adequate notice to the Commonwealth, creditors and purchasers. Its pertinent part reads as follows:

"Such certificate of title, when issued by the Division showing a lien or encumbrance, shall be deemed adequate notice to the Commonwealth, creditors and purchasers that a lien against the motor vehicle exists and the recording of such reservation of title, lien or encumbrance in the county or city wherein the purchaser or debtor resides or elsewhere is not necessary and shall not be required. * * *"

This legislation, Title 46 Motor Vehicles, now provides the sole means by which titles to motor vehicles may be issued and recorded and liens made effectual against creditors and purchasers without actual notice. In my opinion it nullifies the principle stated in the *Boice* case insofar as the transfer of titles to motor vehicles is concerned.

---

[1] *O'Connor* v. *Smith*, 188 Va. 214, 219, 49 S. E. (2d) 310, 312, also cited in the majority opinion involved the sale and transfer of personal property other than motor vehicles.

[2] The amendments made by Acts of 1952, which appear in the 1954 Supplement to the Code of 1950, under "Title 46, Motor Vehicles" are not pertinent to this controversy.

When a dealer applies for the issuance of a title certificate upon a new car, whether it be with or without a recorded lien thereon, it is known that the car will in all probability be offered for sale in the dealer's usual course of business. Undoubtedly the Legislature was aware of this when the legislation was enacted. The provisions of § 46-71 that the lien or encumbrance upon such title certificate "shall be deemed adequate notice to the Commonwealth, creditors and purchasers" is all-inclusive and unambiguous. It is not limited to a lien on a certificate of title issued to one other than a manufacturer or dealer, but it applies to all certificates of title regularly issued by the Division of Motor Vehicles.

By what mode or method the transfer of ownership, title or interest in a motor vehicle shall be effected, and what shall constitute conclusive evidence of ownership or interest therein, have been determined and fixed by this legislation. It protects the rights and interests of all motor vehicle owners or holders of liens and affords a certain place and means by which any purchaser may readily ascertain the rights and interests of any and all parties in the vehicle. It is not in the public interest to allow individuals by private agreement to alter and set at naught these regulations, which, if observed, offer ample protection to the purchaser, lien holder and owner.

Under the clear and explicit language of this legislation, it should be held binding upon purchasers whether they purchase from a dealer or one other than a dealer.

In *Staunton Industrial Loan Corp.* v. *Wilson* (1951), 190 F. (2d) 706, 709, the effect of recordation of a lien upon the title certificate is stated thus:

"No creditor can complain that he has been mislead, for the lien is registered for all to see. * * * In Virginia today, a man would not buy an automobile on the strength of possession, for the sole evidence of ownership of a motor vehicle is the registered title. * * *"

*Janney* v. *Bell* (1940), 111 F. (2d) 103; *Universal Credit Co.* v. *Botetourt Motor Co.*, 180 Va. 159, 21 S. E. (2d) 800.

When the lien is duly recorded upon the title certificate, that is declared by § 46-71 to be notice to the world of the existence of the lien, and that is true whether the motor vehicle be owned or held for sale by a dealer or other owner.

Acquisition of title to a motor vehicle by a purchaser from a dealer may be effected only through compliance by the parties with the mandatory provisions of the registration act. *Thomas* v. *Mullins*, 153 Va. 383, 149 S. E. 494.

When a certificate of title is issued by the Division of Motor Vehicles to a motor vehicle, it is the owner's sole muniment of title upon which a purchaser may rely.

"Once the vehicle is registered, legal title can be transferred only by the Motor Vehicle Commissioner." *Universal Credit Co.* v. *Botetourt Motor Co., supra*, at p. 173.

Section 46-84 provides the only method by which title to a motor vehicle shall be transferred to a purchaser. If he purchases the vehicle, whether from a dealer or one other than a dealer, with a lien recorded upon the title certificate, then we should hold that he acquired the vehicle subject to that lien.

BUCHANAN AND SMITH, JJ., join in this dissent.